MASTIN H. ARTHUR, Respondent, v. WHEELER & WILSON MANUFACTURING COMPANY, Appellant.

June 6, 1882.

1. In an action for deceit, a petition which alleges that the statement made by the defendant was false and was fraudulently made, sufficiently alleges the *scienter*.

2. To support an action for deceit, the defendant must have known, or had good reason to believe, that the statement made was false, or he must have assumed or intended to convey the impression that he actually knew the truth of the statement.

3. Where the question is as to fraudulent misrepresentations of facts peculiarly within the defendant's knowledge, that the plaintiff had means of knowing the truth is not necessarily fatal to his recovery.

4. The allegation and proof being that a sum certain was obtained by false representations, the jury may be instructed to allow interest on that amount.

APPEAL from the St. Louis Circuit Court, THAYER, J.
*Affirmed.*
M. W. HUFF, for the appellant.
E. P. JOHNSON, for the respondent.

BAKEWELL, J., delivered the opinion of the court.

There are two counts to the petition in this case. The first is for money had and received. The second count sets out a bond executed by one Gillingwaters as principal, and plaintiff as surety, conditioned for the faithful performance of his duty by Gillingwaters as agent of Sumner; and alleges that Sumner, having sold out his business to defendants, turned over to them, with his other papers, this bond; that defendants wilfully, falsely, and fraudulently represented to plaintiff that Gillingwaters, as the agent of Sumner, had violated the condition of this bond, and was indebted to defendants in the sum of $230.47, and demanded that sum of plaintiff; and that plaintiff, relying on said false and fraudulent representations of defendants, and

believing the same to be true, paid to defendant, for the supposed cancellation of said bond, whereas, in fact, Gillingwaters had not violated the conditions of the bond and was not indebted to defendants. The prayer is for damages.

It appears from the evidence that, up to December, 1873, and for some years before that time, Sumner had been dealing on his own account in Wheeler & Wilson sewing machines. In March, 1873, he appointed Gillingwaters, at Hannibal, his agent for the sale of such machines, and took from him the bond in question, with plaintiff as surety, for the faithful performance of his duties as agent. Gillingwaters was the agent of Sumner until December 1, 1873, when Sumner sold out to defendants, and turned over to them all papers connected with his business. Gillingwaters was notified of the sale, and in Feburary, 1874, he had an interview with Kalb, the secretary of defendant, whose business it was to settle up agents' accounts. He then had a settlement with Kalb, which lasted two days. Sumner owed Gillingwaters about $1,000, for machines sold up to December 1st; and Gillingwaters owed Sumner between $700 and $800, for moneys and goods, and had a horse and harness of his. It was agreed that Gillingwaters should have the horse and harness and receive $50 in full of balance due him, and receipts were exchanged in full. Kalb then proposed that Gillingwaters remain as agent on new terms, which he accepted, and handed to Gillingwaters a new bond for plaintiff to sign, and a letter dated February 28, 1874, addressed to plaintiff, which states that Gillingwaters must give a new bond, and that the former bond was given to Sumner, and is only binding in connection with the business as conducted directly by him. This letter and bond were not shown to plaintiff, nor did he know anything about them until after he had paid to defendant the money which he sues for in this action. Gillingwaters returned to Hannibal, but worked for defendants only a week or two, as an experiment, after which he notified them that he would give

up the agency; and a Mr. Hill was sent up to Hannibal to settle with Gillingwaters and receive the property in his hands. Gillingwaters says there was due him a considerable sum on commission account, which Hill said could only be settled at St. Louis by Kalb. Gillingwaters declined to settle for some machines sold until his commissions were settled, and claimed a balance due him, which he called at the office of defendant to collect, several times in 1874 and 1875. He says that it was never intimated to him that he owed defendants.

The statement of defendant to Gillingwaters, in April, 1874, showed a balance of $104.30; but, against this was set $241 of commissions not yet due to him, but to become due for various sales. This was not carried out on the ledger. On June 30, 1874, the ledger account is closed by a credit entry, "By agent's loss account, $123.47," which balances the credit entries against Gillingwaters, the commission which he was to receive not appearing in the account.

On November 27, 1875, two days after plaintiff had settled the demand made upon him by defendant, new entries are made upon the ledger account of defendant with Gillingwaters. They charge him for five machines $292, and with agent's loss account, $123, and credit him with the commissions which had not been carried out, and with $230.47 received from plaintiff to balance.

On November 12, 1875, defendant wrote to plaintiff, enclosing a statement of account by which they claimed that Gillingwaters owed them for machines, less commissions, $230.47, which they request him to pay, stating that the amount is due by Gillingwaters as principal and by plaintiff as surety; that they can get no satisfaction from Gillingwaters and must proceed against plaintiff. The result was, that plaintiff, believing the statement of defendant to be true, within a few days, and before November 25, 1875, paid the demand by giving his two notes, which he paid to defend-

ant in a day or two and before maturity. When the notes were paid, defendant delivered to plaintiff his bond, with a receipt upon the back of it for $230.47, the alleged deficit of Gillingwaters. Afterwards, plaintiff ascertained the facts from Gillingwaters, on applying to him to be reimbursed. He then began this suit. There was a verdict and judgment for plaintiff for $272.25.

The case was given to the jury upon the following declarations of law, of which the first two were given on the motion of the court, and the last two at the instance of defendant :

1. " If you believe and find from the evidence, that, at the time defendant procured from plaintiff the two notes read in evidence, defendant represented to plaintiff that Gillingwaters was indebted to defendant in the sum of $230.47, and that such statement was untrue in point of fact, and was known to be untrue ; and if you believe that plaintiff believed such statement to be true when he made the notes and paid them, and was induced by such statements to execute the notes and pay them, then he will be entitled to recover the money so paid, from the defendant, with interest on the same at six per cent per annum from the time he paid it to this date."

2. " The court instructs the jury that if they believe from the evidence that at the time the money mentioned in the petition was paid, James Gillingwaters was indebted to the defendant in the sum of $230.47, or a larger sum, which indebtedness arose out of his accounts as agent of one Sumner, after the execution of the bond mentioned in the petition, or out of his accounts as agent of defendant, after defendant succeeded to the business of said Sumner ; and that said money was paid by plaintiff, he believing that he was liable on said bond as surety of said Gillingwaters, and that no fraud—that is, false statements or representations— was used by defendant or its agents or officers to induce belief, then they must find for defendant."

3. " The court instructs the jury that if they believe from

the evidence that the plaintiff executed to one Sumner his bond, by which he became security for all money and property of said Sumner coming into the hands of one Gillingwaters, as agent of said Sumner; and that said Sumner turned over to defendant his business, together with money and property then in the hands of said Gillingwaters, for which property said Gillingwaters failed to account to defendant; and the money alleged to have been paid defendant was paid by plaintiff voluntarily, he believing at the time that he was liable on said bond to defendant; and, at the time of said payment, said Gillingwaters was actually indebted to said defendant in a sum as great or greater than the amount actually paid by plaintiff, then they must find for defendant."

4. "The court instructs the jury that if they believe from the evidence that, at the time defendant purchased the business of Sumner, said Sumner transferred to defendant certain property then in the hands of one Gillingwaters, upon whose bond plaintiff was liable to said Sumner, as surety of said Gillingwaters, for the return of said property or its proceeds, and the property mentioned was never accounted for by said Gillingwaters; and, at the time of the payment of the money here sued for, said Gillingwaters owed on said bond $230.47, or a larger sum, which was paid by plaintiff voluntarily, believing at the time that he was liable on said bond, and the defendant used no fraud to induce this belief on the part of the plaintiff, then they must find for defendant, though they may believe defendant threatened to sue plaintiff if this money was not paid."

On the trial, plaintiff was compelled to elect upon which count he would proceed, and he dismissed as to the first count. Defendant objected to all evidence under the second count, because the petition states no cause of action, inasmuch as it does not allege that the representations made by defendant were known by it, at the time, to be false.

As plaintiff, in his petition, alleged not only that the

statement made by defendant was false, but, also, that
it was fraudulently made, we think that the *scienter* was
sufficiently alleged to support the action for deceit, and
that the objection to evidence on this ground was properly
overruled.

There was evidence to support the verdict. In order to
sustain the action, "it was necessary to show that defend-
ant, in making the false statement by which plaintiff was
deceived, either believed, or had good reason to believe,
that he assumed, or intended to convey the impression that
he had actual knowledge of the truth of his statement,
though conscious that he had no such knowledge." *Du-
laney* v. *Rogers*, 64 Mo. 203. It seems impossible, in view
of the evidence, that the business agents of the defendant
corporation could have believed, in view of the exchange of
receipts on the settlement with Gillingwaters, and in view
of the entries on their own books, that Gillingwaters owed
anything to the defendant on account of any transaction
during the period covered by the bond to Sumner. If the
means of inquiry had been equally open to both parties, and
there had been a mistake without any fraud or falsehood,
it may be that plaintiff would have had no remedy at law or
in equity. But that was not the case made by the plead-
ings, the instructions, or the evidence. Where there is
no question of fraud, money paid voluntarily under a mis-
take of fact is recoverable at law, unless it is clear that the
party making the payment intended to waive all inquiry
into the facts. *Kelly* v. *Solari*, 9 Mee. & W. 54. And
where the question is not one of mistake, but of fraudulent
misrepresentation as to facts peculiarly within the knowl-
edge of defendant, inducing the payment, as in the case at
bar, the mere fact that the person deceived to his hurt had
means of learning the truth had he made diligent inquiry,
is not necessarily fatal to the right to recover. It cannot be
said that the representation made in this case was not cal-
culated to deceive, or that it might not have deceived an

ordinarily cautious man. It was as to a matter within the special knowledge of the person making the statement, and it does not appear that any means were at hand by which the person to whom it was made could detect its falsity.

The instructions seem to have put the case to the jury in a way of which defendant has no reason to complain. It is objected by appellant that the amount of damages ought to have been left to the jury, under the evidence. We do not see how defendant could have been prejudiced by the instructions in this respect. There is no dispute as to the amount paid. It was paid as the amount due by Gillingwaters under his bond, and the uncontradicted testimony is that Gillingwaters, long before the demand made upon plaintiff, had settled with defendant and received a full discharge for all matters covered by the bond. It is true that the action sounded in damages, and the general rule is that interest is not recoverable on unliquidated damages for an uncertain demand, but should enter into the estimate of the jury, and be found as part of the damage itself. But here the allegations are, and the proof is, that a certain sum was obtained by false representations; there was no question as to the amount, and we see no error in instructing the jury to find interest upon the amount if they should find for plaintiff.

That the form of action in this case is one in which it is the province of the jury to fix the amount of damages, is true; but the defendant, on the undisputed facts of the case, is not prejudiced by the form of the instruction as to damages, and it does not furnish sufficient ground for reversing the judgment, which is clearly for the right party, and is not excessive, and, upon the whole, ought not to be disturbed. In case of fraud in fact, the party injured is entitled to recover, not merely his actual loss, but, also generally, exemplary or vindictive damages; while, in a case of fraud in law, without any fraud in fact, the party suffering ought to look for indemnity only. 2 Smith's Ld.

Cas. 175. But the defendant in this case has no reason to complain if the jury were confined by the instructions to the consideration of the actual damages to plaintiff.

The judgment is affirmed. All the judges concur.