# GEORGE W. KOONTZ, Respondent, v. LOUIS KAUFMAN *et al.*, Appellants.

## Kansas City Court of Appeals, June 13, 1888.

1. PRACTICE—EVIDENCE—COMPETENCY OF RECORD OF JUDGMENT TO SHOW DAMAGES—CASE ADJUDGED.—Where the *gravamen* of plaintiff's case is (as in this case) that, by reason of defendant's false and fraudulent representations respecting the ownership of property, he was induced to release the same from his levy (plaintiff being a constable at the time), whereby he was subjected to damages, it is competent to plead and put in evidence the record of that judgment, as his loss was consequent upon it, to prove the judgment, and its satisfaction. And being admissible for this purpose, it was proper not to exclude it on a general objection to its entire competency ; its effect should have been limited by instructions to the jury.

2. ——— RES JUDICATA—HOW FAR CONCLUSIVE, ETC.—It is a fundamental rule of the doctrine of *res judicata*, that judgments *in personam* conclude only parties to the record and their privies. They cannot be invoked by strangers. But among parties are those who have assumed such relation to the litigation as to be treated as a party. (But no one is a privy to a judgment whose succession to the rights of property thereby affected occurred previous to the institution of the suit). And where one is bound to protect another from liability, he is bound by the result of a litigation to which such other is a party, provided he had notice of the litigation and opportunity to control and manage it. But merely appearing and testifying in the case is not sufficient to bind them, nor even the secret employment of counsel by them.

3. ACTIONS FOR FRAUD—QUALITY OF REPRESENTATION NECESSARY TO SUSTAIN—CASE ADJUDGED.—An action based upon the deceit or fraudulent representation of another cannot be maintained in the absence of proof that the party making them believed, or had good reason to believe, at the time he made them, that they were false ; or that he assumed that he had actual knowledge of their truth, though conscious that he had no such knowledge. There must be proof of the *scienter*. (That issue of fact was not properly submitted to the jury here, and there was no finding thereon).

*On motion for rehearing.*

4.  PRACTICE—APPELLATE COURTS—ASSIGNMENT OF ERRORS.—The
    statute directs the appellant or plaintiff in error to file in the cause
    a specific assignment of errors "on or before the first day on
    which causes from the same circuit are set for hearing, in default
    of which such assignment of errors, the appeal or writ of error
    may be dismissed," etc.  The other party shall then join in such
    error within four days.  (Rev. Stat., secs. 3764, 3765).  The statute
    directs the court to examine the record, as presented here, on the
    assignments, and to affirm or reverse, as the fact and law may be.
    The inquiry is not limited to the points taken in the briefs of
    counsel.

5.  —— INSTRUCTION—RIGHTS OF PARTIES CONCERNING.—A party
    has a right to direct and positive instructions ; and the jury are not
    to be left to believe in distinctions where none exist, or to recon-
    cile positions by mere argument and inference.  Such a practice
    would tend to mislead, instead of enlightening, the jury.

APPEAL from Cooper Circuit Court, HON. E. L.
EDWARDS, Judge.

*Reversed and remanded.*

*Motion for rehearing denied.*

Statement of case by the court.

The petition in this case is as follows :

"The plaintiff states that on the twenty-fifth day
of April, 1881, he was constable of Boonville township
in the county of Cooper and state of Missouri, duly
commissioned and qualified ; that on the said day John
L. O'Bryan commenced a suit by attachment before R.
H. Howard, justice of the peace of said Boonville town-
ship, county and state aforesaid, against one Charles
Kaufman, and a writ of attachment was issued by said
justice in said cause and by him directed and delivered
to plaintiff as constable as aforesaid to be by him exe-
cuted according to law ; that in obedience to the com-
mand in said writ plaintiff as constable as aforesaid on
said day seized and levied upon the following described
property as the property of said Charles Kaufman, the

defendant in said writ, that is to say, one two-horse wagon, one dark brown mule, one sorrel horse, one sausage-grinder, two meat blocks, two meat racks, one engine and boiler, one countershaft and pulleys and five hangers; plaintiff states that on the day next after such seizure and levy, to-wit, on the twenty-sixth day of April, 1881, the said defendants, Louis R. Kaufman and Frederick Kaufman, came to the plaintiff and stated and represented to him that they the said defendants were the owners absolutely of the property seized and levied upon as aforesaid by plaintiff as the property of said Charles Kaufman, that is to say, that part of said property belonged to one of said defendants and the remainder to the other, and that he the said Charles Kaufman had no right, title, or interest whatever therein; and the plaintiff says that, relying on the truth of the statements and representations so as aforesaid made to him by said defendants, that they were the owners of said property and that the said Charles Kaufman had no right, title, nor interest therein, plaintiff was induced to release and did release all of said property from such levy and on the same day delivered the possession thereof to said defendants.

"1. [Plaintiff states that afterwards, at the June term, 1881, of the circuit court of Cooper county the said John L. O'Bryan instituted a suit against plaintiff on his official bond as constable as aforesaid for a wrongful release of said property from the levy and seizure as aforesaid made by plaintiff, and at the February term, 1882, of said court recovered a judgment against plaintiff in said cause for the sum of $109.30; that said defendants had notice of the pendency of said suit and were present and testified at the trial thereof. Plaintiff says he sued out a writ of error in said cause and carried the same to the Supreme Court of the state of Missouri, where, at the October term, 1884, of said court, the judgment of the circuit court aforesaid was affirmed, and plaintiff has been compelled to pay off and discharge the same, amounting with interest and costs of suit to

the sum of $225.77, and has also incurred great expense for attorneys' fees in and about his defence of said suit, to-wit, the sum of $115.00.]

"2. Plaintiff states that said defendants were not in fact the owners of the property seized and levied upon by plaintiff as constable as aforesaid, as they stated and represented themselves to plaintiff to be, and their statements and representations as aforesaid made to plaintiff, that they were the absolute owners of said property and that said Charles Kaufman had no right, title nor interest therein, were false and fraudulent and known to said defendants at the time so to be false and fraudulent; that said false and fraudulent statements were knowingly made by said defendants for the purpose of inducing plaintiff to release said property from said levy and seizure so made by him, and relying in the truth of said false and fraudulent statements, he was induced to release said property and deliver the possession of the same to said defendants. Wherefore plaintiff says a right of action has accrued to him, and that by means and in consequence of the false and fraudulent statements and representations so as aforesaid made to him by said defendants, he has been damaged in the sum of three hundred and fifty dollars, for which with interest and costs he asks judgment."

The defendants moved to strike out that portion of the petition included within brackets, on the ground, principally, that the proceedings and judgment therein named were *res inter alios acta*, and were not binding on these defendants. The court overruled the motion, and defendants excepted.

Defendants answered separately, tendering the general issue, and setting forth that they were the owners of separate portions of the property in question, describing the part each owned, and denied that their claim thereto was false and fraudulent.

Plaintiff's evidence tended to support the allegations of the petition, as to the seizure of the property under the writ of attachment, and that defendants came

to him and made claim, each to certain portions of the property, and made the same in separate written claims; that they represented to plaintiff that they owned the same, as claimed, and that Charles Kaufman had no title to or interest in the same; that they also stated to him that he should not lose anything at the hands of O'Bryan if he should sue plaintiff for releasing said property; that upon the faith of their representations, as to the ownership of the property, he did release the same from the levy under the writ of attachment.

The plaintiff then, against the objections of defendants, read in evidence the record of the proceedings, judgments, etc., in the case of O'Bryan vs. Koontz, and the decision of the Supreme Court affirming the said judgment.

Plaintiff also made proof of the amount paid out by him in satisfaction of said judgment and costs both in the circuit and Supreme Court, and for attorneys' fees.

Plaintiff also introduced evidence tending to show that defendants had notice of the suit of O'Bryan against him, and that one of them gave him the names of certain witnesses, and that they attended as witnesses at said trial and testified in favor of Koontz. The plaintiff further testified that just after the trial in the circuit court had gone against him, he spoke to one of the defendants, and urged him to help him out of the judgment, when defendant answered: "You and O'Bryan will have to fight it out"; and defendants declined to do more.

Defendants' evidence tended to show that they did not make any joint representations to plaintiff touching their ownership of the property, but each for himself as to the part claimed by him, and that they made no other statements to him. They also testified that they in fact did own said property, as claimed by them, that they attended at said trial between O'Bryan and Koontz, on subpoenae, and testified as witnesses in behalf of Koontz.

There were some facts and circumstances, developed in the cross-examination of defendants, from which the jury might reasonably infer, that as to a part of this property the title of defendants was only colorable, and that Charles Kaufman had such interest in one mule, and part of the machinery in the building, as to be subject to the writ of attachment.

The instructions given by the court on behalf of plaintiff, which bear upon the questions to be decided, are as follows :

" 1. The jury are instructed that it is admitted by the pleadings in this case that the plaintiff, as constable of Boonville township, Cooper county, Missouri, on the twenty-fifth day of April, 1881, levied a writ of attachment in favor of John L. O'Bryan and against Charles Kaufman upon the property described in the petition ; and if the jury believe from the evidence that afterwards, while the plaintiff held said property by virtue of said levy, the defendants herein, for the purpose of inducing the plaintiff to release said property, went to him and stated as a fact within their own knowledge that said property did not belong to the defendant in said attachment, but that part of it belonged to Louis Kaufman and another part to Fritz Kaufman, and that if the plaintiff should release said property he should lose nothing thereby ; and that the plaintiff, relying upon the said representations as to the ownership of said property as true, was thereby induced to release said property from said levy ; and that John L. O'Bryan, the plaintiff in said attachment, instituted suit against said Koontz for the wrongful release of said property on the ground that the same belonged to said Charles Kaufman, and that the defendants herein had notice of the pendency of said action against the plaintiff and gave him the names of persons to be summoned as witnesses therein and appeared and testified upon said trial, and that John L. O'Bryan in said action recovered a judgment against the plaintiff herein and plaintiff was compelled to pay said judgment, and if the jury believe

that said representations of the defendants as to the ownership of said property were false, then the plaintiff is entitled to recover the amount he was compelled to pay to satisfy said judgment and costs and also the necessary expenses incurred by him in defending said suit.

"2. If the jury believe from the evidence that the defendants for the purpose of inducing the plaintiff to release the property levied upon by him represented and stated to him as a fact within their own knowledge, that the defendant in said attachment was not the owner of said property, and thereby induced the plaintiff to release said property from said levy, then it is wholly immaterial in this case whether said defendants believed said statements to be true or not ; and if the jury further find from the evidence that they told the plaintiff that if he should be sued for acting upon their said representations he should lose nothing thereby, and that when O'Bryan sued plaintiff the defendants had notice of the pendency of said action and assisted in preparing the defence thereof, and that said O'Bryan recovered judgment in said action against the plaintiff and that the plaintiff was compelled to pay the same, and that the defendants' representations were false as to the ownership of said property, then the plaintiff is entitled to recover the amount he was compelled to pay to satisfy said judgment and costs, as well as the necessary expenses incurred by him in the defence of said suit."

The court refused the following instructions asked by defendants :

"2. Although the jury may believe from the evidence in this case that the property in controversy at the time of its seizure by Koontz under the writ of attachment, and at the time it was claimed by the defendants, belonged to Charles Kaufman, yet this fact will not authorize you to find your verdict for plaintiff unless you further find from all the evidence that the defendants wilfully, knowingly and falsely represented, and stated to Koontz that they owned said property."

"5. If the jury believe from the evidence that the defendants each claimed a separate portion of the property levied upon by Koontz and that they separately notified the said Koontz in writing of their said claims and that he thereupon returned the same to them in accordance with their said demands, then you are instructed that a joint action cannot be maintained against them for so claiming said property, although their said claims to the ownership thereof were false; and you will, therefore, find your verdict for defendants, unless you further believe that they had previously agreed and conspired together to falsely and fraudulently claim said property."

"6. The court instructs the jury that in determining the ownership of the property mentioned in the petition you will not consider the verdict of the jury or the judgment of the court in the case of John L. O'Bryan *vs.* George W. Koontz."

The jury returned a verdict for plaintiff. From the judgment thereon entered the defendants have appealed.

COSGROVE & JOHNSTON, for the appellants.

I. The court erred in permitting the introduction in evidence of the pleadings and record in the suit of John L. O'Bryan *vs.* George W. Koontz *et al.* The defendants in the present case, Louis and Fred Kaufman, were neither parties nor privies to the former suit. *Henry v. Woods*, 77 Mo. 277; *Strauss v. Ayres*, 87 Mo. 348; *Quigley v. Bank*, 80 Mo. 289.

II. There is no evidence that the defendants were ever asked to take part in the defence of the suit of O'Bryan *vs.* Koontz *et al.*, any further than to testify as witnesses when subpœnaed, or that they ever had an opportunity of controlling or ever attempted to assume control of the defence of said cause. and consequently they were not in privity with Koontz, nor "parties" to

said suit. The facts in the cases of *Strong v. Ins. Co.*, 62 Mo. 289, and *Wood v. Ensel*, 63 Mo. 193, were very different from those in the present case. In the latter case the party sought to be bound by the former trial was an active participant therein, claimed the property in dispute, appeared as a witness, and in the absence of the defendant assumed control of the case and employed and paid attorneys to attend to it. No such facts appear in this case. The court erred in overruling the defendants' motion to strike out part of plaintiff's answer. See authorities above cited.

III. The court erred in refusing to submit to the jury the special issues requested by defendants. *Benton v. Railroad*, 25 Mo. App. 155.

IV. The court should have given instruction numbered six asked by the defendants, because they could not be held jointly liable in this action unless they had fraudulently agreed together to claim the attached property, and this question should have been submitted to the jury by instruction. Upon the theory of the circuit court the jury may have believed that one of the defendants was the owner of all the attached property claimed by him, yet it was bound to find a verdict against him for the whole amount of plaintiff's damages. This was attempted to be avoided by requesting the submission to the jury of the special issues, so that they might determine and report to the court the liability, if any, of each defendant.

V. The only reason for maintaining this action jointly against the defendants is upon the theory that they had fraudulently combined together to falsely claim all the attached property—without this element of combination suit could not be maintained against them jointly. Therefore, the jury should have been instructed to find a verdict for the defendants unless there was evidence of such false and fraudulent combination.

DRAFFEN & WILLIAMS and T. B. WRIGHT, for the respondent.

I.   We shall confine our brief to the points made by appellants.   The court will not search the record for possible errors not complained of in appellants' brief, nor will it permit appellants, by a general assignment of errors, to require respondent to anticipate all possible rulings upon what had been made the subject of exception below.   *McKenzie v. Railroad*, 24 Mo. App. 392.

II.   The appellants' first point is not well taken. (*a*) The record in the case of O'Bryan *vs.* Koontz was certainly competent to prove the rendition of the judgment therein and the damages sustained by plaintiff. The plaintiff, in order to make out his case, was compelled to show that he had been mulcted in damages on account of defendants' fraudulent representations.   To do this, it was necessary to introduce the judgment, and in order to show upon what it was founded, to present the pleadings.   Its admissibility in evidence did not depend upon its conclusiveness in this case of the questions litigated in that.   A judgment is evidence against all the world to prove its own rendition.   It was also competent to prove the damages sustained.   Freeman on Judgments [3 Ed.] secs. 416, 417.   (*b*) If the record was admissible in evidence for any purpose, the first point made by appellants for a reversal cannot be sustained.   *Schlicker v. Gordon*, 19 Mo. App. 479 ; *Babb v. Ellis*, 76 Mo. 459.   (*c*) The record was not only competent as evidence, but was conclusive as to the questions litigated in that case.   "An express notice to defendants to defend the suit was not necessary in order to charge their liability."   *City v. Robbins*, 2 Black, 418 ; *Barney v. Dewey*, 13 Johns. 224; *Beers v. Pinney*, 12 Wend. 309; *Strong & Gantt v. Ins. Co.*, 62 Mo. 289.   In the case first cited, it was said, "defendant knew that the case was in court; was told of the day of trial ; was applied to to assist in procuring testimony ; and wrote to a witness, and is as much chargeable with notice as if

he had been directly told that he could contest Woodbury's right to recover, and that the city would look to him for indemnity." (*d*) The matter sought to be stricken out of the petition was a necessary and proper averment. *Barney v. Dewey*, 13 Johns. 224. With that stricken out, the petition would not show how plaintiff had sustained any injury.

III. The court properly refused to submit to the jury for a special finding the questions asked to be submitted by defendants. "The statute only intends that issues in the cause shall be submitted to the jury for special finding, and not particular questions of fact." *Turner v. Railroad*, 23 Mo. App. 12. The issue in the case was, whether defendants falsely represented that the defendant in the attachment, Charles Kaufman, had no interest in the property levied upon therein. If they did so represent, and he owned any part of it (and the judgment in the case of O'Bryan *vs.* Koontz is conclusive, as shown above, that he did own it), then the courts will not stop to apportion the damages among wrongdoers. The questions were, therefore, immaterial. *Dutzi v. Geisel*, 23 Mo. App. 676. Even should it be held that the court ought to have submitted the questions asked by defendants, still this court will not reverse on that account, as the law authorizing such special findings has been repealed, and no good would result from a reversal of the judgment. Laws of Mo. 1887, p. 229; *Wayne Co. v. Railroad*, 66 Mo. 77; *Hubbard v. Gilpin*, 57 Mo. 441; *Totten v. James*, 55 Mo. 494.

IV. Defendants' fifth instruction was rightly refused. (*a*) The fact that each claimed in writing a separate portion of the property would not exempt either from liability for his fraudulent representations, that defendant in attachment had no interest in any of the property. (*b*) There was no allegation in the answers of a misjoinder. (*c*) It was unnecessary to prove that they had previously conspired together in the fraudulent claim, as it was shown that they went together to the constable. *Kenyon v. Woodruff*, 33

Mich. 310 ; 2 Add. on Torts, sec. 1187 ; *McArthur v. Manufacturing Co.*, 12 Mo. 355 ; *Burgert v. Borchert*, 59 Mo. 80.

V. The defendants' representations as to the ownership of the property levied upon were clearly false, and their own evidence discloses the fact that the same were fraudulent, and were made to save the property from the attachment. The plaintiff, in good faith, acted upon these statements. He sustained damages in consequence, and, by the judgment below, the defendants are required to make good the loss sustained, and it is manifestly for the right party, and should be affirmed. *Kenyon v. Woodruff*, 33 Mich. 310 ; 2 Add. on Torts, p. 423, sec. 1187 ; *Barney v. Dewey*, 13 Johns. 224.

Philips, P. J.—I. The first question, in order, for determination is, as to the admissibility in evidence of the record in the suit of O'Bryan *vs.* Koontz. The *gravamen* of plaintiff's complaint is, that by reason of defendants' false and fraudulent representations respecting the ownership of the property he was induced to release the same from his levy, whereby he was subjected to damage. As his loss was consequent upon that judgment, it was competent to plead and put in evidence that record to prove the judgment, and its satisfaction. Freeman on Judg. 416, 417 ; *Walker v. Deaver*, 79 Mo. 678 ; *Blasdale v. Babcock*, 1 Johns. 517. It being admissible for one purpose, it was proper not to exclude it on a general objection to its entire competency. The proper practice, where the evidence offered is competent for a certain purpose, but incompetent for others for which it might be misused before the jury, is to limit and qualify its proper application by instructions to the jury. *Babb v. Ellis*, 76 Mo. 460 ; *Schlicker v. Gordon*, 19 Mo. App. 479.

II. The further question arises, did the court err in giving or refusing instructions respecting the effect or office of said judgment ? On the part of the defendants the court refused to direct the jury, that in determining

the ownership of the property in question, they should not regard the verdict or judgment in O'Bryan *vs.* Koontz. This presented the question broadly as to whether said judgment was conclusive on the matter of such ownership. It was either an estoppel or it was not. If the judgment was not conclusive, as to this issue, it was no evidence at all. There was no half-way ground; and the defendants were entitled to have the jury properly advised as to the effect of this record admitted in evidence by the court over their objection. It is difficult to say from the first instruction given for plaintiff what effect was intended to be given to the judgment. It is submitted in connection with various other facts, leaving the jury to draw their own inference as to what importance they would attach to the recovery in O'Bryan *vs.* Koontz. They might or they might not have concluded that the judgment was conclusive on defendants as to the ownership of the property in question. And so we must hold to sustain this judgment.

It is a fundamental rule of the doctrine of *res judicata* that judgments *in personam* conclude only parties to the record and their privies. They cannot be invoked by strangers. Big. Estop. 59; *Quigley v. Bank*, 80 Mo. 290. These defendants were not parties of record in that action. Were they privies in contemplation of law? In its strict sense, privies are those who have mutual or successive relationship to the same rights of property, or subject-matter, such as "personal representatives, heirs, devisees, legatees, assignees, voluntary grantees, or judgment creditors, or purchasers from them with notice of the facts." *Henry v. Woods*, 77 Mo. 281. As these defendants assert title and ownership anterior to the judgment, they are not bound as privies thereunder, in the ordinary sense; for "no one is a privy to a judgment whose succession to the rights of property thereby affected occurred previous to the institution of the suit." Freeman on Judg., sec. 162; *Henry v. Woods, supra.*

The doctrine as to parties has been extended so as to

apply to a person, though not nominally a party to the
record, yet who has *assumed* such relation to the litiga-
tion as to be treated as a party in interest, so as to be
bound by the result. Illustrations of this exception
are to be found in instances of a party employing
attorneys to conduct the cause, furnishing witnesses,
controlling and managing the suit at trial, and becoming
responsible for costs, and the like. *Stoddard v.
Thompson*, 31 Ia. 80 ; *Strong v. Ins. Co.*, 62 Mo. 289 ;
*Wood v. Ensel*, 63 Mo. 193 ; *Landis v. Hamilton*, 77
Mo. 555. In *Strong v. Ins. Co.*, the rule was applied to
the instance of a judgment against an original insurer,
who contested the suit, with the advice or acquiescence,
and for the benefit of, the reinsurer. The ruling was
predicated of the principle that, " Where one is bound
to protect another from liability, he is bound by the
result of a litigation to which such other is a party, pro-
vided he had notice of the litigation, and opportunity
to control and manage it." The principle was later
applied by the Supreme Court in *Wood v. Ensel, supra.*
In that case there had been a litigation and judgment
between one Balke and Swift concerning the title of a
billiard-table. In the present suit the defendant claimed
that he was the mere bailee of said Balke ; and the
record of that judgment between Balke and Swift was
admitted in evidence against plaintiff. The court said :
" It was quite sufficient that the testimony of the plain-
tiff himself showed that he was an active participant in
the former trial respecting the same subject-matter,
claimed the property in dispute as his own, appeared as
a witness in the case, and in the absence of Swift (who
claimed to hold only as plaintiff's bailee) assumed
control of the case, and employed and paid attorneys to
defend and attend to it. These facts bring the plaintiff
clearly within the definition of a party to the action he
thus defends." ·

The facts of the case at bar fall far short of these
requirements as to one who assumes to control the liti-
gation. The evidence in this case only shows that one

of the defendants gave Koontz, at his request, the names of two witnesses to call. The defendants appeared and testified for Koontz, under subpoena. The plaintiff himself testified: "I don't remember that they did anything at the trial but testify." They did not employ counsel in the case, nor assume to control and manage the case. Merely appearing and testifying in the case was not sufficient to bind them, nor even secretly employing counsel, had they done so. *Schroeder v. Larhman*, 26 Minn. 87; *Blackwood v. Brown*, 32 Mich. 107; *Wright v. Andrews*, 130 Mass. 149; Wells Res Adj., sec. 175.

The case of *Yorks v. Steele*, 50 Barb. 397, so often cited both by courts and text-writers, is a decided authority against the defendants being bound by said judgment, as to the ownership of the property, on the ground of their participation at the trial. One Pond obtained judgment against the plaintiff Yorks, and, under execution issued thereon, one Chase, as sheriff, levied on a horse in the possession of the defendant Steele as the property of Pond. Steele brought suit against Chase. On the trial of that issue, Yorks employed an attorney for the sheriff, and himself testified in the case. Steele recovered judgment, on the ground that the horse was not subject to the execution against Yorks. In the action then brought by Yorks against Steele to recover this horse, Steele was permitted to put in evidence the record of said judgment in Steele *vs.* Chase, and plaintiff took a nonsuit. The court held the judgment inadmissible. JOHNSON, J., said: "It is of no consequence, *prima facie*, that the plaintiff was a witness for the defendant in the action brought by this defendant. He had no right, as a witness, to examine or cross-examine other witnesses, or to call other witnesses, who might have a better knowledge of the facts than himself. In short, as a mere witness, he had no charge or control of the case whatever. And supposing that judgment was erroneous, for any reason, he had no right of appeal and no standing by which he

could be heard to correct the error. Why, then, should he be bound by the adjudication? It was not a judgment against him, in any sense, nor upon any right or interest which would subject him to an action for recovery over, as in case of a failure of title upon the sale of chattels. * * * It is plain that the plaintiff has never yet had his day in court on the question of his title. There is nothing which proves, or tends to prove, that the present plaintiff defended, or had any right to defend, the former action. They were not in privity as master and servant, or principal and agent. The plaintiff here was under no obligation, moral or legal, to defend the sheriff in that action, and had no legal right to do so, or even to interfere with it in any way whatever. Not being a party to the record, he is not estopped by the judgment, unless, in the language of COMSTOCK, J., in *Castle v. Noyes*, 14 N. Y. 329, 332, he had a right to control the proceedings and appeal from the judgment." There is no pretense here that these defendants sought to control or manage the action of O'Bryan *vs.* Koontz. The plaintiff himself testified that immediately after that trial he asked one of the defendants to help him out, and the reply was: "You and O'Bryan will have to fight it out." Yet plaintiff appealed the case to the Supreme Court, where he was unsuccessful, making more costs, which he asserted in his testimony the right to recover from these defendants; and it is inferable, from the testimony and the amount of the judgment recovered herein, that he was allowed such costs by the jury. No exception, however, was taken to this evidence.

III. If, therefore, that judgment concluded the defendants on the question of ownership of the property, it must be on the only remaining rule, that, where a party is answerable over to another for the subject-matter of the judgment, he is bound by such judgment, when he has been notified of the pendency of the litigation, and had an opportunity to defend the action. This arises

usually from some contractual relation between the parties, as in the case of the reinsurance in *Strong v. Ins. Co.*, *supra*, of indemnitors, warrantors, and the like. That is not this case. This action, under the petition, is *ex delicto*, predicated of the fraud, the wrong, and the falsehood of the defendants. It is in the nature of an action of deceit and fraud. And, although the plaintiff in his first instruction predicated a right of recovery on the fact, in part, that defendants told plaintiff if he released the property they would protect him, or some such representation, this was outside of the allegations of the petition, and should not have been given. *Benson v. Railroad*, 78 Mo. 504; *White v. Chaney*, 20 Mo. App. 390. If such assurance was affirmatively given by defendants, the plaintiff should have counted on the promise, and the doctrine of *respondeat superior*, invoked by plaintiff, would have then arisen on the contractual relation. But such is not this action. On this petition the plaintiff must prove the fraud, or the state of facts from which the fraud and deceit arise in law. *Arthur v. Man. Co.*, 12 Mo. App. 335.

It follows that if the judgment was binding on the defendants, it must rest upon the further rule, that the defendants are answerable over by operation of law, which is akin to the doctrine of *respondeat superior*. This has been applied to the instance of one who places obstructions, or commits some nuisance, in the streets of a town, whereby a person receives injury. The town being primarily liable to the injured party, if mulcted in damages at the suit of the sufferer, has a cause of action over against the wrong-doer whose immediate act caused the injury. In such case, if the municipal corporation when sued gives notice to the wrong-doer of the pendency of the suit, he will be bound by the verdict and judgment therein rendered, as to the fact that the highway was defective, that the person was injured, and the amount of the injury. Wells Res. Judicata, sec. 193; *Littleton v. Richardson*, 34 N. H. 187; *Chicago v. Robbins*, 2 Black, 418. This doctrine, or rule, has also

been applied to the instance of an action arising, as in this case, *ex delicto*, for fraud and deceit, whereby the wrong-doer was answerable over to the party sustaining a loss by reason of such misrepresentation. This was notably so in the case of *Barney. v. Dewy*, 13 Johns. 224, where the plaintiff was induced to buy a horse of the defendant on his fraudulent representations as to ownership. In an action of trover brought by the true owner against plaintiff the defendant appeared as a witness for the plaintiff and testified that the plaintiff owned the horse, and judgment went for the claimant. In the subsequent action for damages against the defendant instituted by the plaintiff, his vendee, the plaintiff introduced in evidence the record of that judgment. It was held to be admissible in evidence, and conclusive against the defendant. Our conclusion, therefore, is that the court did not err in refusing the sixth instruction asked by defendants.

IV. Appellants further contend that the court erred in refusing the fifth declaration of law asked by defendants. There is no question in my mind but that, in view of the defendants' evidence, they were entitled to an instruction to the effect that, if defendants only made separate claims to separate portions of the property, and separately represented to plaintiff that he claimed such portion, a joint action would not lie, without further proof of a prior combination between them thus to mislead and deceive the plaintiff. But the misfortune to defendants' contention is, that the instruction as framed did not clearly enough express such idea. It is : "If the jury believe, from the evidence, that the defendants each claimed a separate portion of the property, and that they separately notified Koontz in writing of their said claims." This could all be true, that each claimed a certain portion, and so notified Koontz, and yet the fact remain, as testified to by plaintiff, that they made these statements in each other's presence, that the other also owned the part he claimed. The

instruction, as asked, ignored this aspect of the plaintiff's evidence, and told the jury that if each claimed a separate portion, without more, they should find for defendants unless they found the existence of the antecedent fraudulent combination or conspiracy. There may have been no prior fraudulent combination between the defendants to thus make claim to separate portions of the property, so as to cover the whole, yet, if in fact, when they were together in the plaintiff's presence, they falsely and fraudulently asserted that they were the owners of the property as each claimed it, and that the other owned the portion claimed by him, it was sufficient to base the joint action upon the falsehood, if the proof was such as to evince the fraudulent intent. The evil intent could arise at the instant. *Burgert v. Borchert*, 59 Mo. 83.

V. The court erred, however, in refusing the second instruction asked by defendants, and in giving the second instruction for plaintiff. As already stated the gist of this action is the fraud and deceit of defendants in claiming to own the property. The allegations of the petition are that said representations "were false and fraudulent, and known to said defendants at the time so to be false and fraudulent; that said false and fraudulent statements were knowingly made by said defendants, for the purpose of inducing plaintiff to release said property." These were essential averments, of facts constitutive of the cause of action, well known to the intelligent pleader, without which the petition would have invited a demurrer. The *gravamen* of the action is the false statement made with intent to mislead, followed by damage. *Medbury v. Watson*, 6 Met. 259 ; *Barney v. Dewey*, 13 Johns. 226 ; *Arthur v. Man. Co.*, 12 Mo. App. 335. "It seems to be established that an action based upon the deceit or fraudulent representations of another cannot be maintained in the absence of proof that the party making them believed or had good reason to believe at the time he made them that they were false, or that he assumed or intended to convey the impression that

he had actual knowledge of their truth, though conscious that he had no such knowledge." *Dulaney v. Rogers,* 64 Mo. 203. There must be proof of the *scienter.* Were the law otherwise, it would be that any person who made claim to property seized on process, however honest and sincere he might be in the belief and conviction that he owned it, and however free from any design to defraud or wrong the other claimant, would be liable in this form of action where the officer released it on the faith of such asserted ownership. In short, it would make such claim *in pais* operate as an interpleader in the cause. It would make every judgment between the execution or attaching creditor and the officer, or other party concerned, *res adjudicata* against the party so presenting his claim to the officer, regardless of the question of being answerable over for the fraud in asserting the claim.

While the question as to Charles Kaufman's ownership of the property has been adjudicated, the other question, as to whether the representations and statements by defendants to Koontz were made in good faith or fraudulently, remains at issue, with the burden of proof on the plaintiff. That issue of fact was not properly submitted to the jury, and there has been no finding thereon. The case must, therefore, be retried.

The judgment is reversed and the cause remanded. Ellison, J., concurs; Hall, J., non-concurs.

*On motion for rehearing.*

Philips, P. J.—I. It is first suggested, in justification of this motion, that the judgment of reversal is placed upon grounds not distinctly made and relied upon by appellants in their brief; and, therefore, respondent's counsel did not cite the authorities now relied upon to show that the instructions criticised in the opinion have been substantially approved by the Supreme Court. The case of *McKenzie v. Railroad,* 24 Mo. App. 396, 397, is cited in support of the proposition

that, unless the appellant shall point out in his brief the specific errors relied on for reversal, this court will not search through the record to discover the errors only designated in some vague or general way. As applied to the facts of that case, the observations of the learned judge who delivered the opinion were just and appropriate. The errors assigned were, that the trial court admitted or refused evidence that was competent, material, and relevant, or the reverse, without pointing out what particular evidence, thus leaving the court, without a guide, to grope and search through a record of three hundred and forty pages to make the discovery, and then without any assurance that the matter discovered was that relied on by the general suggestion.

The statute directs the appellant or plaintiff in error to file in the cause a specific assignment of errors "on or before the first day on which causes from the same circuit are set for hearing, in default of which such assignment of errors the appeal or writ of error may be dismissed," etc. The other party shall then join in such error within four days. Rev. Stat., secs. 3764, 3765. Where no such assignment of errors is made, the court will dismiss the writ, etc. 57 Mo. 602; 51 Mo. 412; 59 Mo. 143; 44 Mo. 604; 32 Mo. 230. This is to make an issue in this court. The statute directs us to examine the record, as presented here, on the assignments, and to affirm or reverse, as the fact and law may be. The brief of counsel is designed to aid the court in its investigation of the case. But we are by no means limited in our inquiry or conclusions to the points made or grounds taken in such brief.

In the assignment of errors in this case, the action of the lower court in giving and refusing instructions is distinctly alleged for error. Although counsel in their brief might urge one or more special criticisms and objections to the instructions, yet, if the court, in its examination, should discover other patent error or objection, it could not shut its eyes to the fact and the law,

and, by passing it in silence, leave it as a precedent—as having received the tacit approval of the court. This, as experience and observation have taught us, is too frequently the case, to the misleading of attorneys and trial courts, and to the embarrassment of the appellate court when the matter again comes up for review.

If some instruction contains a verbal inaccuracy or hidden technical defect, to which the attention of the court was not called by appellant, and the court should affirm the judgment, the appellant ought not to be heard afterwards to complain. But where the error, as in this case, was patent, and acted on by the court, it can be no ground for a rehearing, at the motion of the respondent, that the appellant, in his brief and argument, laid no special stress on the error. This much we deem it important to say touching this practical matter of appellate practice.

II. It is conceded in the motion for rehearing, that fraud and deceit constitute the *gist* of this action ; and that the burden of establishing the existence of the fraud rests upon the plaintiff. But it is contended that the instructions given on behalf of plaintiff met the requirements of the law, and gave the defendants as much as they were entitled to on this issue.

The gist of the action being, as all the courts agree, the *intent* to deceive, with consequent damage, it is a question of fact to be found by the jury. While the mode of proving this essential fact may vary with the attendant circumstances of each particular case, the central idea and principle remains fixed, that the element of fraud must be made to appear in some form or other. And while it is true, as asserted by the learned counsel, that it is not essential that actual falsehood should be uttered to give the right of action, it is as equally true that the mere utterance of a falsehood, or a fact, is not alone sufficient. The language of NAPTON, J., in *Dulaney v. Rogers*, 64 Mo. 203, 204, is, that the plaintiff must prove that the party making the false statements may have "believed, or had good reason to

believe, at the time he made them, that they were false, or that he assumed or intended to convey the impression that he had actual knowledge of their truth, *though conscious that he had no such knowledge.*" Again he says, it must appear "that a representation is made which is *known* to be false."

So the instruction approved by the court contained the essential requirement. This is again distinctly brought out by NORTON, J., in *Kenny v. Railroad,* 80 Mo. 572, in which he says: "The generally received doctrine now is that, in order to support an action for fraudulent representations, it is not sufficient to show that a party made statements which he did not know to be true and which were in fact false. There *must be fraud* as distinguished from mere mistake. It is not, however, always absolutely necessary that an actual falsehood should be uttered to render a party liable in an action for deceit; if he states material facts as of his own knowledge, and not as a mere matter of opinion, or a general assertion about a matter of which he has no knowledge whatever, this distinct wilful statement, *in ignorance of the truth,* is the same as the statement of a known falsehood, and will constitute a *scienter.*" In this it is to be observed that the assertion of a fact as of his own knowledge is qualified with the words "in ignorance of the truth." This was necessarily so to make it harmonize with the holding of NAPTON, J., *supra.*

So in the later case of *Nauman v. Oberle,* 90 Mo. 669, the instruction approved was, that "if defendant falsely and fraudulently represented, etc., and *knew* the representation was not true."

Applying these rulings to the instructions under review, it will be found that while they were framed with some regard to the rule, yet they are so artfully (not in an invidious sense) drawn, as to not unreasonably warrant the jury in making the inference that if defendants stated that they owned the property, as of their own knowledge, and that statement turned out to be untrue, the *scienter* was proved without more. They do

not contain the essential words, or the equivalent, "though conscious that they had no such knowledge," or that they were aware of the fact "that they did not know," or that it was "known to be false," and the like.

The fraudulent intent being the gist of the action, the defendants were entitled to have this issue of fact distinctly and sharply submitted to the jury, in such perspicuous language as to leave no just grounds for their minds being misled. As said in *Gray v. McDonald*, 28 Mo. App. 492, approving the language of STORY, J., in *Livingston v. Ins. Co.*, 7 Cranch, 544: "If in any point of law, the defendant was entitled to such direction, the court erred in its refusal, although the direction afterwards given by the court might, by inference and argument, in the opinion of this court, be pressed to the same extent. For the party has a right to a direct and positive instruction; and the jury are not to be left to believe in distinctions where none exist, or to reconcile positions by mere argument and inference. It would be a dangerous practice, and tend to mislead instead of enlightening the jury."

It is clear to our minds that the instructions, as drawn by plaintiff, were not calculated to convey as they should to the apprehension of the jury the real gist of this issue.

The motion for rehearing is denied.   All concur.