THE STATE ex rel. BOWLING GREEN TRUST
    COMPANY, EQUITABLE TRUST COMPANY
    OF NEW YORK, METROPOLITAN TRUST
    COMPANY OF THE STATE OF NEW YORK,
    GEORGE J. GOULD, EDWIN GOULD, ST.
    LOUIS, IRON MOUNTAIN & SOUTHERN
    RAILWAY COMPANY, and WABASH RAIL-
    ROAD COMPANY v. JAMES D. BARNETT,
    Judge of Audrain Circuit Court.

In Banc, July 2, 1912.

1. **PROHIBITION: Demurrer to Petition: No Return: Overruled:
Further Pleading.** A demurrer challenging the sufficiency of
relator's petition for a writ of prohibition makes the facts stated
in the petition the facts of the case; it admits all well-pleaded
facts stated in the petition, and if those facts, thus admitted,
show relator's right to the writ, the demurrer must be over-
ruled, the writ made permanent, and no further pleadings will
be tolerated. But by the facts is not meant conclusions of
law.

2. ———: **Jurisdiction: Lack Shown By Petition: By Failure of
Service.** The petition in the case pending in the circuit court
may show a want of jurisdiction of the cause. Likewise a fail-
ure to show service of process upon defendant may show a
lack of jurisdiction.

3. ———: ———: **Of Subject-Matter and Particular Case.** The
case pending in the circuit court may be one of a class over
whose subject-matter the court has jurisdiction, yet it may
not have jurisdiction of the particular case; and that lack of
jurisdiction may be disclosed by the bill or petition filed in
said court.

4. ———: ———: **To Have a Mortgage Declared Junior Lien:
Foisting Jurisdiction on Court.** Where the facts set out in the
petition clearly show that a refunding mortgage is a subse-
quent and junior lien to a debenture mortgage on a defend-
ant's railroad properties in this State, and the refunding mort-
gage, also set out, expressly recognizes the debenture mort-
gage as the superior lien, the circuit court, otherwise without
jurisdiction, cannot take cognizance of the cause of action
upon a mere prayer in the petition asking the court to declare
the refunding mortgage to be a subsequent and inferior lien,

State ex rel. v. Barnett.

there being no allegation that defendants had done anything indicating that they had not recognized the refunding mortgage as a junior lien. It is idle to ask a court to compel defendants to do what the petition alleges they have already done. Jurisdiction cannot be foisted upon the court in that manner.

5. ———: ———: **Cancellation of Bonds Held in Another State.** A Missouri circuit court has no jurisdiction to render a judgment touching personal property in New York held in trust for the benefit of persons not before the court. It has no jurisdiction to cancel certain debenture bonds held in New York under a trust agreement to be performed in New York, especially when many persons who the petition alleges are interested therein are not before the court either by publication or actual service. If the non-resident have no property in this State there is nothing upon which a Missouri court can adjudicate.

6. ———: ———: **Suit Pending.** Where the petition on its face alleges that the trustee in a debenture mortgage brought suit in a Federal court, having jurisdiction, to have the right of all claimants under that mortgage adjudicated, which is the object of the suit brought in the State court, and further alleges that said suit is still pending and undetermined, and does not show that any demand has ever been made by plaintiffs that said trustee go forward with such suit or that it had declined to do so, the State court has no jurisdiction of the cause.

## Prohibition.

WRIT ALLOWED.

*James L. Minnis* for relators; *Wells H. Blodgett, Martin L. Clardy* and *Nagle & Kirby* of counsel.

(1) The demurrer admits all the substantial, material and traversable allegations of the petition. State ex rel. v. Eby, 170 Mo. 522. (2) The suit in the circuit court does not involve or seek to affect any real or personal property situated within the jurisdiction of that court. By Sec. 1674, R. S. 1899, the jurisdiction of circuit courts is confined to the respective counties in which they may be held. The question, then, is whether the suit in the circuit court involves or seeks to affect any real or personal prop-

erty situate in Audrain county. This question must be determined from the facts stated in the bill, for it has been often said by this court that "an allegation of a conclusion of law raises no issue, need not be denied, and is as though it had not been pleaded." Mallinckrodt v. Nemnich, 169 Mo. 397. (3) The only relief asked with respect to property (aside from the bonds and stocks hereinafter mentioned) is a decree adjudging the debenture mortgage a lien on the railroad property of the Wabash Company prior to the lien of the refunding mortgage. As said by the court in State ex rel. v. L. & L. Co., 171 Mo. 671, "The character of the action is determined by the facts stated in the petition, and not by the prayer for relief;" or, as said in State ex rel. v. Dearing, 180 Mo. 63, "Moreover, the jurisdiction of the court is not determined by the prayer for relief, but by the facts stated which constitute the cause of action." On the authority of these cases, this part of the prayer may be disregarded, because it is contrary to the facts averred in the bill. According to the bill the debenture mortgage was not only executed more than sixteen years prior to the refunding mortgage, but the refunding mortgage expressly recognizes the debenture mortgage as constituting a prior lien. The first paragraph of the prayer of the bill is therefore merely colorable. The only reference to property is that the Wabash Company conveyed by the debenture mortgage "certain lines of railroad, roadbed, rolling stock, rights of way and other properties, both real and personal, as in said mortgage more particularly described, a large part of which real property and much of said personal property then were and now are situate in Missouri." This language does not identify any property. In any event, it cannot be claimed that it describes any property situate in Audrain county. It is true the bill states that the railroad property above mentioned is fully described in the de-

benture mortgage and that a copy thereof is attached to the bill as an exhibit, but this court has often ruled, that an exhibit forms no part of the record of a cause. State ex rel. v. Crum, 157 Mo. 545. The order of publication does not describe any property except the bonds and stock hereafter mentioned. Sec. 575, R. S. 1899; Winning v. Trueblood, 149 Mo. 572. If the railroad property referred to in the bill had been described therein and in the order of publication, the posture of the case would not have been changed, as we shall hereafter show. (4) The only object of the suit is to obtain a decree adjudging that the exchanged debenture bonds now held in New York by the Bowling Company or its successor, the Equitable Company, as trustee under the collateral provisions of the refunding mortgage, have been paid and requiring that they be canceled. The only object of the suit in the circuit court is to obtain a decree adjudging the exchanged debenture bonds now held in New York by the Bowling Company, or its successor, the Equitable Company, have been paid, and appropriate orders to make such decree effective. (5) The circuit court has not jurisdiction of the subject-matter of the action. The circuit court has no jurisdiction, on notice by publication, to enter a decree in a suit against nonresident trustees, and some of the nonresident beneficiaries, but not all the beneficiaries, adjudging or affecting the status of property held in trust in a sister State. Sec. 1674, R. S. 1899; Penoyer v. Neff, 95 U. S. 714; Carr v. Coal Co., 96 Mo. 155. (6) The circuit court has not jurisdiction of the persons of the nonresident defendants. State ex rel. v. Dearing, 180 Mo. 62; Sec. 575, R. S. 1899. (7) The circuit court has not jurisdiction to enter a decree or order against the resident defendants. No relief is asked against the Iron Mountain Company. The relief prayed against the Wabash Company is predicated upon a decree against the

Trust Companies adjudging that the exchanged bonds have been paid. The disposition of the case as to the Trust Companies would therefore seem to dispose of the case as to the other codefendants. But it is elementary law that a court of equity has not jurisdiction to enter an order against any defendant in a case unless it has before it all the parties necessary to a complete determination of the litigation. Harris v. Pullman, 84 Ill. 20. (8) The United States Circuit Court has jurisdiction not only of the matters stated in the bill in that suit, but of the entire subject-matter of the debenture mortgage and bonds—which may be properly brought to the attention of that court by an amended or supplemental bill; and its jurisdiction excludes the jurisdiction of any other court over any part of the subject-matter of that suit. State ex rel. v. Reynolds, 209 Mo. 261; Byars v. McCauley, 149 U. S. 608; Porter v. Sabin, 149 U. S. 473; Shields v. Coleman, 157 U. S. 168. (9) Where a mortgage provides that the trustee alone shall sue, a bondholder cannot sue, unless the trustee refuses to sue, or otherwise disregards his obligations as trustee, in which event it is necessary that these facts should be averred, and that the trustee should be joined as a defendant in the suit. Cook on Corp. (6 Ed.), Sec. 826; Railroad v. Fisher, 104 Va. 121; Electric Co. v. Electric Co., 87 Fed. 590; Consolidated Co. v. City, 92 Fed. 759; Morgan v. City, 15 Fed. 55.

*Barclay, Fauntleroy & Cullen* for respondent.

(1) The writ of prohibition goes only to restrain the assumed exercise of jurisdiction where none exists. If the court whose action is complained of acts within its jurisdiction, but commits an error, the writ of prohibition will not lie. Want of prohibition cannot be made to serve the purpose of a writ of error or *certiorari*. State ex rel. v. Withrow, 108 Mo. 1; State

ex rel. v. Railroad, 100 Mo. 59; State ex rel. v. Scar-
ritt, 128 Mo. 331; State ex rel. v. Johnson, 132 Mo.
105; State ex rel. v. Moelenkamp, 132 Mo. 134; State
ex rel. v. Wood, 155 Mo. 425; Wand v. Ryan, 166 Mo.
·646; State ex rel. v. Henderson, 164 Mo. 347; Delaney
v. Court, 167 Mo. 667; Davison v. Hough, 165 Mo.
573; Schubach v. McDonald, 179 Mo. 163.   (2)   The
debenture bonds and mortgage gave to the holders of
said bonds the right to elect one-half of the highest
officers, one-half of the members of the board of di-
rectors of the Wabash Company, and to vote at all
meetings of the stockholders of the Wabash Company,
and therefore the plaintiffs in this case have a right
to complain of the illegal increase or overissue of
stock, and to maintain a bill in equity to set aside
and cancel same.   1 Cook on Corporations (6 Ed.),
Secs. 291 and 297.   (3)   By the express words of the
statute service by publication may be obtained in suits
for the foreclosure of mortgages and deeds of trust,
and for the enforcement of liens against either real
or personal property, and in all actions at law or in
equity, which have for their immediate object the en-
forcement or establishment of any lawful right, claim
or demand to or against any real or personal prop-
erty within the jurisdiction of the court, and such lan-
guage is broad enough to include such actions as the
one now pending in Audrain county.   State ex rel. v.
Ross, 122 Mo. 461; Railroad v. Poching Co., 46 Fed.
584; Mitchener v. Holmes, 117 Mo. 185; Smith v. Min-
ing Co., 47 Mo. App. 409; Clark v. Brotherhood, 99 Mo.
App. 687.   (4)   The statute authorizing service by
publication does not require that the publication con-
tain a detailed description of the property, except in
suits for the partition of land.   In an action similar to
the one now being considered the publication need only
state "briefly the object and general nature of the pe-
tition."   In cases involving liens, created by contract,
jurisdiction arises out of the lien, which is the basis

of the action. The same rule applies as in attachment cases. Randall v. Snyder, 214 Mo. 33; Williams v. Lobban, 206 Mo. 408; Harris v. Grodner, 42 Mo. 159. (5) It is admissible to a certain extent in pleading in chancery to file written exhibits, and to refer to them as part of the bill. This may be done in general terms, and the exhibits may be referred to for greater certainty as to particular details. When a bill, as in this case, not only refers to, but makes a certain instrument a part of the bill itself, such instrument may be used in aid of an indefinite statement. Tel. Co. v. Tel. Co., 34 Fed. 803; Hood v. Inman, 4 Johns. Ch. (N. Y.) 437; Land Co. v. Foundry Co., 96 Ala. 389; Moore v. Titman, 33 Ill. 357; Electrolibration Co. v. Jackson, 52 Fed. 773; Hastings v. Belden, 55 Vt. 273; Surget v. Byers, Hempst. (U. S.) 715; Board v. Board, 154 Fed. 238; Williard v. Davis, 122 Fed. 363. This court has considered an exhibit as part of the pleading and of the record proper, and that ruling was adhered to on motion for rehearing, calling attention to the line of cases (principally cases at law) holding that an exhibit was no part of the pleading or the record proper. Roden v. Helm, 192 Mo. 90. (6) Where the court has jurisdiction of the subject-matter, and the question of its jurisdiction of the person turns upon some fact to be determined by the court, its decision that it has jurisdiction, if wrong, is an error, and prohibition is not the proper remedy. Hawland v. Railroad, 134 Mo. 479; Troegel v. Judge, 35 La. Ann. 1164; Railroad Co. v. Robers, 52 W. Va. 450; Works on Courts and Jurisdiction, 634.

GRAVES, J.—This is an original proceeding, the purpose of which is to prevent the respondent herein, judge of the circuit court in and for Audrain county, from further proceeding in a cause in said court pending, wherein the Continental Securities Company and

Clarence H. Venner are plaintiffs and the relators in this case are defendants.

In the application for our writ the relators have set out in full the bill in equity in the circuit court case, as well as the different attempts at service upon the several defendants in the bill named. The sufficiency of the bill itself to confer jurisdiction upon the circuit court is challenged, as is also the sufficiency of the service upon the respective defendants in that case. The bill pending in the circuit court is exceedingly voluminous, but counsel for relators have given us as succinct and fair an analysis of it as we could make, and their analysis, not being criticized by counsel on the other side, we adopt. It thus reads:

"The petition states:

"(a)    That the Continental Securities Company (herein called the Continental Company) is a New Jersey corporation, with its place of business in the city of Jersey City in that State; that Venner is a citizen and resident of the State of New York; that the Wabash Railroad Company (herein called the Wabash Company) is a corporation consolidated under the laws of Ohio, Illinois, Indiana, Michigan and Missouri, with its place of business in the city of St. Louis; that the Bowling Green Trust Company (herein called the Bowling Company), the Equitable Trust Company (herein called the Equitable Company) and the Metropolitan Trust Company (herein called the Metropolitan Company) are corporations of the State of New York, with their places of business in the city of New York; that the St. Louis, Iron Mountain & Southern Railway Company (herein called the Iron Mountain Company) is a Missouri corporation, with its place of business in the city of St. Louis.

"(b)    That the Wabash Company on July 1, 1889, executed a mortgage (herein called the debenture mortgage) whereby it conveyed to the Mercantile Company as trustee (we quote from the petition) 'cer-

tain lines of railroad, roadbed, rolling stock, rights
of way and other property, both real and personal, as
in said mortgage more particularly described, a large
part of which said real property, and much of said
personal property then were and are now situated in
Missouri,' to secure debenture A bonds of the par
value of $3,500,000, and debenture B bonds of the par
value of $26,500,000, to bear interest at six per cent,
but to be paid only out of the net income of the com-
pany as defined by the mortgage; that the debenture
bonds, debenture mortgage, and articles of consolida-
tion, and by-laws of the Wabash Company provided
that the holders of the debenture bonds shall have
the right to elect one-half of the highest even number
of directors of the Wabash Company and that the
stockholders shall have the right to elect the other
half; that the directors thus elected shall have the
right to elect an additional director, who shall become
president of the company, but in the event that they
fail to agree, the Mercantile Company shall select
the additional director, who shall become president
of the company, and that the holders of the debenture
bonds shall have the right to cast one vote for each
$100 par value of bonds held by them at all stockhold-
ers' meetings, of the Wabash Company.

"(c)  That during the year 1896 to 1899, inclu-
sive, the net income from the property covered by the
debenture mortgage applicable to the payment of in-
terest on the debenture bonds, was more than
$600,000, and since 1899 has been several million dol-
lars; that one per cent was paid on debenture A bonds
in the year 1896, and six per cent in each of the years
1900, 1901, 1902, 1903, and three per cent in the year
1904; that prior to July 1, 1907, no interest had been
paid on debenture B bonds.

"(e)  That on the 29th day of June, 1906, the
board of directors of the Wabash Company unani-
mously adopted a resolution authorizing the creation

of an issue of fifty-year four per cent refunding gold bonds, to not exceed in amount $200,000,000, to be secured by a mortgage on its property, for the purpose of making provision to refund and retire all of its outstanding indebtedness and obligations secured by lien, including the exchange of debenture bonds.

"(f)    That on August 16, 1906, the Wabash Railroad Company by order of its board of directors, called a special meeting of its stockholders and debenture bondholders, to be held at Toledo, Ohio, on the 22d day of October, 1906, for the following purposes: To obtain authority to create said issue of four per cent fifty-year refunding gold bonds; to increase the preferred capital stock by the amount of $16,500,000; to increase the common capital stock by the amount of $81,500,000; to authorize the issue of preferred and common stock not exceeding $16,500,000 of each, as might be necessary to effect the exchange hereinafter mentioned of the debenture bonds; to authorize the exchange of debenture bonds for new bonds and preferred and common stock, upon conditions authorized and approved by the board of directors, and to authorize all necessary action in the premises by the board of directors and the officers of the company.

"(g)    That pursuant to said call, the majority in amount of the stockholders and debenture bondholders of the Wabash Company at special meeting, approved and authorized the carrying out of said plan for the exchange of the debenture bonds.

"(h)    That on the 30th day of October, 1906, the committee of the holders of debenture bonds advertised a plan for the exchange of debenture bonds for new four per cent bonds, and preferred and common stock of the Wabash Company, as follows: For each thousand dollars par value of debenture A bonds, $795 of new bonds, $580 preferred stock, and $580 common stock; and for each one thousand dollars par value debenture B bonds, $750 of new four per cent

bonds, $520 of preferred common stock, and $520 of common stock of the Wabash Company.

"(i)   That on the 27th day of December, 1906, the Wabash Company, having declared the plan for the exchange of new stock and bonds for debenture bonds operative, executed its first refunding and extension mortgage (herein called the refunding mortgage) to the Bowling Company, to secure said issue of $200,000,000 fifty-year four per cent refunding gold bonds (herein called new bonds); that said mortgage authorized the issue of $21,862,500 of new bonds, or so much thereof as might be necessary from time to time to give in exchange for debenture bonds which might be offered for exchange, the exchange to be effected by giving new bonds and preferred and common stock for debenture bonds, as hereinbefore stated; that the debenture bonds so exchanged (herein called exchange debenture bonds) should be marked 'not negotiable' and held by the Bowling Company 'uncancelled as purchaser, without extinguishment or impairment of right or lien, as a part of the mortgaged premises and trust estate, and as additional security for the payment of the bonds hereby secured' until the exchange of all the debenture bonds should be effected, whereupon on the request of the Wabash Company it should deliver all said bonds to the Wabash Company in order to secure the satisfaction and discharge of the debenture mortgage; that until all debenture bonds had been exchanged, the Bowling Company should retain sole custody of said bonds, and exercise all rights attached to them as the owner of them, provided the sum received by the Bowling Company as interest on the exchanged debenture bonds should until default in the payment of interest on the new bonds, be paid to the Wabash Company; that in the absence of default of the new bonds, the Bowling Company should execute to such persons as might be named by the holders of a majority of the stock of the

Wabash Company at their annual meeting, proxies entitling them to vote on the exchanged debenture bonds.

"(j)    That on April 1, 1909, the Bowling Company merged and consolidated with the Equitable Company, whereby the Equitable Company succeeded to the assets, business, trust and affairs of the Bowling Company.

"(k)    That the laws of Michigan provided that the capital stock of corporations may be paid for either in cash or in real or personal property, and if paid for in property, an itemized description thereof shall be annexed to the articles of association, together with the value of each item taken; that the laws of Illinois provided that no corporation shall issue any stock or bonds, except for money, labor or property actually received and applied to the purpose for which such corporation was organized, and that all stock dividends and other fictitious increase of capital stock or indebtedness of any corporation, shall be void.

"(l)    That on January 20, 1909, there had been $28,054,000 par value debenture bonds exchanged for new bonds, and common preferred stock, in accordance with said plan, and that the Wabash Company had issued in effecting such exchange without other consideration $14,770,840 of preferred stock and a like amount of common stock.

"(m)    That George J. Gould and Edwin Gould 'were prior to the carrying out of said plan, owners of a large amount, the exact number being unknown to your orators, of said debenture bonds, which were afterwards exchanged and paid under said plan, and are now, as your orators are informed and believe, owners of the new stock and bonds which were so exchanged for said debenture bonds. That the Iron Mountain Company was, prior to the carrying out of said plan, the owner of $5,435,000 par value debenture B bonds, which were exchanged under said plan; that prior to said exchange said bonds were pledged

to the Metropolitan Company as collateral security up to the date of such exchange; that the Iron Mountain Company is the owner of new bonds and preferred and common stock given in exchange for its debenture bonds, and that said new securities are now held as collateral security by the Metropolitan Company.'

"(n) 'That said new bonds and preferred and common stock which were exchanged for said debenture bonds as aforesaid, were issued to, and are now held by a great number of persons other than the above named defendants, who are unknown to your orators, and who are, as your orators are informed and believe, so numerous and so widespread (most of said persons being without the jurisdiction of this court) that they cannot be joined as defendants in this, your orator's petition, without manifest inconvenience and delay.'

"(o) That in the month of August, 1905, a suit was commenced in the circuit court of the United States for the Eastern District of Missouri, Eastern Division, by the Mercantile Company, the trustee in the debenture mortgage against the Wabash Company, for an accounting of the net income secured and agreed in said mortgage to be paid as and for interest on the debenture bonds; that said suit had not been brought to final hearing, and no testimony has been taken therein since the summer of 1906.

"The prayers ask for the following relief:

"1. That the refunding mortgage be decreed a subsequent lien to the lien of the debenture mortgage.

"2. That the exchanged debenture bonds be decreed paid and discharged.

"3. That the pledge of the Bowling Company of the exchanged debenture bonds be adjudged void and that the Bowling Company and the Equitable Company be ordered to surrender them to the Wabash Company for cancellation.

"4. That the Wabash Company be restrained from paying out of its net income and profits derived from the lines of railroad covered by the debenture mortgage any interest on the new bonds issued under the refunding mortgage until the interest on the unexchanged debenture bonds since July 1, 1906, shall have been paid and until final determination of the suit pending in the circuit court of the United States for the Eastern District of Missouri, and in the event that suit shall result in favor of the Mercantile Company, then until the judgment therein rendered shall have been discharged.

"5. That the preferred capital stock of the Wabash Company issued and used in exchange for debenture bonds be declared void.

"6. That the common stock of the Wabash Company over and above the sum of $7,626,670, which had been issued and used in exchange for debenture bonds be declared void.

"7. That the Wabash Company be enjoined from paying to the Bowling Company or its successor, the Equitable Company, and interest upon the exchanged debenture bonds and from receiving from either of said companies, except under the order of the court, any such interest which has heretofore been or may hereafter be paid by the Wabash Company.

"8. That the Bowling Company, the Equitable Company, and the Wabash Company be enjoined from voting upon the exchange debenture bonds at any meeting of the stockholders or debenture bondholders or both of the Wabash Company, and that the Wabash Company be restrained from permitting any vote to be cast at any such meeting with respect to any of the exchange debenture bonds or upon any of the increased preferred capital stock of the company.

"9. That the refunding mortgage be decreed void so far as it provides for the pledge of the ex-

changed debenture bonds for any purpose whatsoever.

"10. That the Wabash Company be enjoined from delivering any more new bonds or increasing capital stock in exchange for debenture bonds.

"11. That a receiver be appointed for the property, assets and franchise of the Wabash Company, unless otherwise adequate relief be accorded plaintiffs.

"And in default of the relief above prayed for:

"12. That the plan for the issue and delivery of the new bonds and preferred and common stock in exchange for debenture bonds and the pledge to the Bowling Company or Equitable Company for exchanged debenture bonds be decreed void and that all said new bonds and preferred and common stock be decreed void and that the Wabash Company, the Bowling Company and the Equitable Company be ordered to re-exchange the exchanged debenture bonds with the holders of the new bonds and preferred and common stock of the Wabash Company."

The circuit court's petition covers forty-seven printed pages, but the contents of it, as well as its prayer, is fairly covered by the above. In the application for the writ several grounds are urged against the jurisdiction of the circuit court, and such of these as may be necessary we will note in the course of the opinion, for to this petition we must go for the facts of the case.

This court granted the usual preliminary rule in such cases, and the respondent instead of filing a return, files a demurrer challenging the sufficiency of relators' petition for the writ. The grounds of the demurrer are:

"1. That said petition does not state facts sufficient to constitute a cause of action or authorize the court to grant any relief to relators.

"2. There is a defect of parties occupying the attitude of relators.

"3. The parties joined as relators are not necessary or proper parties."

This demurrer makes the facts stated in the petition for the writ the facts of the case. This sufficiently outlines the controversy.

I. The issues in this case are made by the petition for the writ of prohibition and respondent's demurrer. The demurrer admits all well pleaded facts in the petition stated, and if these facts, thus admitted show relators' right to the writ the demurrer should be overruled, and the writ made permanent. In other words no further pleadings will be tolerated. Such seems to be the rule of this court, as well as the general rule. [Trainer v. Porter, 45 Mo. 336; State v. Murphy, 132 Mo. 382; 16 Ency. Pl. & Prac., 1140.] In the latter authority it is said: "The right to the writ is usually determined upon the demurrer or answer of the defendant to the petition, or upon motion to quash the rule or preliminary writ. A demurrer to the petition admits the truth of the facts suggested, and if it is not well taken the writ will be issued upon its being overruled."

In the Trainer case, supra, we said: "The petition is demurred to, and the facts therein recited thereby admitted to be true. The question is therefore presented whether the petition, upon its face, makes a case which will justify this court in prohibiting the further prosecution of the mandamus proceedings complained of; and this raises the further inquiry whether the circuit court has jurisdiction of the cause pending before it—namely, the mandamus suit."

The facts of the petition being admitted by the demurrer, we should grant the writ, if these facts justify such course. By facts we do not mean conclu-

sions of law. The allegation in a petition of a mere conclusion of law raises no issue. [Mallinckrodt v. Nemnich, 169 Mo. 397.]

We have before us at least two well pleaded facts i. e., (1) the petition or bill in the case pending *nisi,* and (2) the divers returns made in the attempted services of process. The petition itself may show want of jurisdiction in a cause. [State ex rel. Hunt v. Grimm, 243 Mo. 667.] Likewise a failure to show service of process may show absence of jurisdiction. [Priest v. Capitain, 236 Mo. 446.] However, if the petition or bill in equity upon its face discloses that the trial court has no jurisdiction of the particular cause, then we need go no further. This in view, we take the bill filed in the circuit court next.

II. Does this bill disclose a cause of action over which the circuit court of Audrain county can take cognizance? That such court has jurisdiction of such class of cases is not sufficient. The question is, does the petition disclose want of jurisdiction in the particular case? In State ex rel. v. Grimm, supra, we had a petition which sought to cancel a deed for fraud. Of the general class the circuit court had jurisdiction. In other words in a proper case the circuit court of the city of St. Louis had jurisdiction to hear and determine a case to cancel a deed for fraud in the procurement of the deed, but in the particular case discussed in the Grimm case we said the court did not have jurisdiction, because the bill disclosed that the land mentioned in the deed was in the State of Virginia and not in Missouri. So in many cases a given court may have jurisdiction of a given class of cases, but not of the particular case, although in a general way such case belongs to the given class.

To get at the right of the circuit court of Audrain county to hear and determine the cause there pend-

ing, we can proceed best by a process of elimination. We shall thus take up the bill.

By a section of the prayer to the bill it is sought to have the circuit court declare the refunding bond mortgage a subsequent and inferior lien to the debenture bond mortgage, which latter secures the bonds held by the plaintiffs. If this were a real question in the case, and if the petition or bill described the railroad property as being in Audrain county (a much mooted matter), it might be said that, with proper service, the circuit court would have jurisdiction. We cannot be guided by the prayer in determining what is in fact sought by the bill. As said before this bill is voluminous and pleads in great detail the facts. From those facts it does not appear that the superiority of the debenture mortgage lien is in fact a question of dispute. In their bill the plaintiffs *nisi* plead and set out portions of the refunding mortgage, and these conclusively show that this second instrument, executed years after the debenture mortgage, in terms recognizes the superior lien of the older mortgage. So the pleading shows, not only that the debenture mortgage is in fact and law a prior lien by reason of prior execution and record, but further by express recognition of such priority of lien in the junior mortgage itself. If the pleading upon its face shows that the debenture mortgage is a prior lien, it also shows the converse, i. e., that the refunding mortgage is the junior mortgage, and that it is so declared upon the face of the instrument itself. Nor is there any averment in the bill that any person has ever given it a different construction. Upon this point the case presented is this: A. gives B. a deed of trust on his land in 1895, then in 1906 A. gives to C. a deed of trust on the same land, and states in the latter that the former has been given and is yet unreleased. Can B. without more than thus merely pleading the two deeds of trust, say to C., ''I want a court to say

whether or not your lien is junior to mine?'' We think not. When B. pleads facts which show that ⌐'s deed of trust is in fact junior, and pleads no other facts or reasons why equity should be invoked in his behalf, he is without standing. It is evident that the prayer in this petition asking to have the refunding mortgage declared a junior lien is an attempt to foist jurisdiction upon a court which perhaps does not have jurisdiction of the cause by reason of the other matter pleaded. It has the appearance of being a ''saving clause'' in the event that others fail. If the facts pleaded are true, and they evidently are, because the two written instruments are set out in substance and parts of them *in haec verba,* then the prayer for this relief is not one made in good faith. Why ask to have a thing done, when you have stated facts which show that the thing has already been done? Why ask the court to do a thing when you state facts which show that the parties themselves have done for you that very thing? Jurisdiction cannot be foisted upon a court in that manner. Had this bill alleged anything upon the part of defendants indicating that they did not and had not recognized the refunding mortgage as a junior lien, then the question might be different, but such method of attempting to give jurisdiction to a court in order to have determined other matters over which the court might not have jurisdiction but for this question, cannot be countenanced. Going back to the supposed case of A., B. and C., suppose C. was not within the jurisdiction of the court; suppose B. in order to get C. before the court upon other matters entirely foreign to the jurisdiction of the particular court, brought his bill and with the foreign matters alleged the giving of the two deeds of trust mentioned above and that the latter one stated that it was subject to the former, and upon the question of property made no further statement: can it be said that the court had bona-fide

acquired jurisdiction of the whole case? We think not. So that unless there is something more than this question to confer jurisdiction, we should hold that there was absence of jurisdiction.

. Other questions we take next.

III. Eliminating the idea that the suit is one to determine precedence as between two mortgages, which we must, under the admissions in the bill, then what is the purpose of the bill, as determined from the facts pleaded, and not from the prayer? To my mind the real, and in fact the only object, of the suit is to obtain a decree adjudging the exchanged debenture bonds now held by the Bowling Green Trust Company or its successors in trust, in New York, have been paid. There were $30,000,000 of these debenture bonds. Over $28,000,000 of them have been exchanged under the terms of the refunding mortgage and are held in New York under the terms of that mortgage, or the trust clause therein mentioned. Plaintiffs own $50,000 of the unexchanged debenture bonds. All they say in their bill as to voting rights, payment of interest, unlawful exchange of refunding bonds and stocks, is centered around the idea that these exchanged bonds should be declared canceled. There are so many conflicts in the bill that it is hard to determine just what is meant by it. They say that the bonds and stock given in exchange for the debenture bonds now held in trust were unlawfully issued and therefore void, yet they say such alleged worthless paper paid in full the debenture bonds and they should be canceled. But I conclude from the whole bill that the real object and purpose of the bill is to cancel these debenture bonds of over $28,000,000 in value, to the end that plaintiffs and others holding the remaining interest of less than $2,000,000 of these debenture bonds would have the full power to elect six directors of the company, under the voting agreement in the

debenture mortgage, and not only so, but to the end that, by the cancellation of the $28,000,000 debenture bonds, as paid, they would have a first lien securing only $2,000,000 of debt instead of $30,000,000 of debt. If this is the purpose of the bill, and we think it is, then has the circuit court jurisdiction?

This requires us to go to the residence and service of the defendants. The mortgagor and maker of the bonds is a resident of Missouri, and for this point we will say has been properly served. For this purpose admit due service on the St. Louis, Iron Mountain & Southern Railway Co., a Missouri corporation. These are the only two we have with personal service. The interest of the mortgagor can be gathered from a mere statement of the relation. The Iron Mountain Railway Company, supra, has no interest further than as a holder of new stock and bonds issued in lieu of the debenture bonds which it held, and its interest outlined in the trust clause of the refunding mortgage is fully set out in our statement. The question then is, can a Missouri court proceed to cancel bonds held in New York under a trust agreement, when the parties plaintiff and most of the heavily interested defendants, live in New York, and have not been personally served in the proceeding? And in addition can and should such court be permitted to proceed when in addition to the foregoing disclosure, it is further announced in the bill "that said new bonds and preferred and common stock which were exchanged for said debenture bonds as aforesaid were issued to and are now held by a great number of persons other than the above-named defendants, who are unknown to your orators, and who are, as your orators are informed and believe, so numerous and wide spread (most of said persons being *without the jurisdiction of this court*) that they cannot be joined as defendants in this your orator's petition without manifest inconvenience and delay."

Now, when it is remembered that the bill avers that, by the terms of the refunding mortgage and the trust agreement therein contained, all holders of new bonds and stocks had an interest in the surrendered debenture bonds, until such time as they might all be surrendered, because they were held uncanceled as a pledge and further security for the new obligations, then it is apparent that the judgment to be rendered in Missouri is a judgment touching personal property in New York, held in trust, for the benefit of parties not before the court. The question then is, what is the character of this suit? Conceding it to be an action to cancel certain debenture bonds held in New York under a trust agreement to be performed in New York, as I think we must, then what? To my mind it is clear our circuit courts are without jurisdiction. The property is not here, neither are the principal parties in interest within the jurisdiction of the court. Can a Missouri circuit court decree the cancellation of bonds held in New York, which bonds are held by a trust agreement to be performed in New York? We think not. Can such court cancel these bonds when upon the face of the petition many parties interested therein are not before the court even by publication or substituted service? We think not. If the property were here the question would be different. But the property sought to be reached is in New York and the most of the parties interested are there, or at least not in Missouri. In such case service by publication or other substituted service will not avail. The property not being here no jurisdiction of the person can be obtained by service of this character.

In Pennoyer v. Neff, 95 U. S. l. c. 723, it is said: "It is in virtue of the State's jurisdiction over the property of the nonresident situated within its limits that its tribunals can inquire into that nonresident's obligations to its own citizens, and the inquiry can

then be carried only to the extent necessary to control the disposition of the property. If the nonresident have no property in the State, there is nothing upon which the tribunals can adjudicate.

"These views are not new. They have been frequently expressed, with more or less distinctness, in opinions of eminent judges, and have been carried into adjudications in numerous cases."

So, too, has said this court in Carr v. Lewis Coal Company, 96 Mo. l. c. 155: "As a general rule, to which this case forms no exception, it is needless to say that in order directly to subject particular property to the judgment or decree of any court, the suit brought for that purpose must be brought where the thing is. [Wells on Jur., Sec. 117; Latrope v. Hayward, 13 Fla. 190; Austin v. Bodley, 4 T. B. Mon. 434; Story Confl. Laws, Sec. 539; Currington v. Brents, 1 McL. 167.]"

So if it be true that the purpose of this bill is to reach property in New York, as we think it is, then there is no jurisdiction in the circuit court of Audrain county.

IV. But independent of all this, there is another question which precludes the jurisdiction of the circuit court. And this, too, although we are in error in previous paragraphs. Plaintiffs' bill in paragraph 23 avers as follows:

"In or about the month of August, 1905, a suit was commenced in the circuit court of the United States for the Eastern District of Missouri, Eastern Division, by the Mercantile Trust Company (a corporation of New York), the trustee under the said debenture mortgage, against the Wabash Railroad Company, for an accounting of the net income secured by and agreed, in said mortgage to be paid, as and for interest on the debenture bonds, but that said suit has never been brought to final hearing, and no testi-

mony has been taken therein since the summer of 1906.''

There is then a conclusion of the pleader to the effect that the suit will not be prosecuted because the Bowling Green Trust Company held and voted this surrendered stock and will hold and vote it in the interest of the Wabash Railroad Company, but this is a mere conclusion. The Mercantile Trust Company (of New York) is the trustee in the debenture mortgage under which plaintiffs claim. There is no charge in the bill that this trustee has refused to act, or has ever been called upon to act for the protection of these plaintiffs and others similarly situated. It does appear, however, that it has acted and brought a suit in the federal court to have the right of all claimants under the debenture mortgage adjudicated. In that suit every question in plaintiffs' voluminous bill in our circuit court could by amended bill (if amendment is required) be adjudicated. The Federal court is now possessed of the cause relating to the rights of the plaintiffs and all other parties under this first mortgage, and having such jurisdiction can fully protect all the rights of the plaintiffs. Nothing in this bill shows that the plaintiffs have ever demanded of the Mercantile Trust Company, their trustee, to go forward with that suit, or that it had declined to go forward—we have only a naked conclusion that through the Bowling Green Trust Company the Wabash Railroad is in control of the suit. This is not sufficient to oust the jurisdiction of the subject-matter now reposed in the federal court. It is clear that these plaintiffs can have no rights except such as accrue to them under the debenture bond mortgage, and all these rights can be adjudicated in the court now having jurisdiction of that suit. The plaintiff in this action in the Federal court is the trustee or representative of the plaintiffs in the action in our circuit court. The debenture mortgage confers

the right to bring suits upon the trustee, and this appears from plaintiffs' bill in this case. Where there is such a provision, the trustee alone can sue, until such time as the trustee refuses to act. When he refuses to act the bondholders may then sue, but he must aver the refusal of the trustee to sue, before he has any standing in court. [3 Cook on Corporations, Sec. 826.] So we have in the bill before us a bondholder suing without any averment that the trustee in his mortgage has refused to sue, and a bill in which it is further averred that the trustee has in fact sued, and such suit is pending in another jurisdiction. Under such circumstances can our circuit court proceed? We think not. The question was so fully covered by Woodson, J., in the recent case of State ex rel. Sullivan et al. v. Reynolds, 209 Mo. 161, that we close with the mere citation of that case. Other questions need not be discussed.

The permanent writ of prohibition should be granted, and it is so ordered. All concur except *Ferriss, J.,* absent; *Brown, J.,* concurs only in result.