SETH WOODS, Individually and as Administrator of the Estate of MINNIE WOODS, Deceased; ROBERT B. WOODS, LILLIE WOODS, Executrix of the Estate of H. T. WOODS, Deceased; CLYDE WOODS, MARIE SCHAFER HISER, and ROSCOE E. SCHAFER, Plaintiffs and Appellants, v. LESTER CANTRELL and FRANCES H. CANTRELL, Defendants and Appellants.—No. 40734.—218 S. W. (2d) 613.

Division One, February 14, 1949.

Rehearing Denied, March 14, 1949.

*Harold T. Lincoln, Arch A. Johnson, Joseph N. Brown,* and *Frank B. Williams* for plaintiffs-appellants.

1008

*John Hosmer* and *Fred A. Moon* for defendants-appellants.

[613] BRADLEY, C.—These are the second appeals in this cause. For the opinion in the first appeals see Woods et al. v. Cantrell et al., 356 Mo. 194, 201 S. W. (2d) 311. The present appeals (each side appealed) are from the rulings of the trial court on after judgment motions. These motions were filed after the mandate of this court went down dismissing the first appeals because taken out of time.

The judgment was rendered September 15, 1945, and became final on that date. The petition upon which the judgment was based was in three counts. The first count asked for a decree that defendants held the land in question in trust for plaintiffs; the second count asked that defendants' deed to the land and a bill of sale of certain personal property to defendant Lester Cantrell be declared to be equitable mortgages and that plaintiffs be permitted to redeem as to the land; the third count asked that the deed conveying the land to defendants [614] and the bill of sale conveying the personal property to defendant Lester Cantrell be set aside. Each count asked for an accounting. The court found for defendants and against plaintiffs on the first count and for plaintiffs and against defendants on the second count. No specific finding was made on the third count. The reliefs sought by the after judgment motions by both sides were denied and the present appeals followed.

In the opinion on the first appeal we gave the background of the cause and for convenience we here give a brief background. September 21, 1940, Mrs. Minnie Woods, now deceased, owned the land and personal property mentioned. She was a widow 76 years old;

was in financial straits; her land and personal property were encumbered. Defendant Lester Cantrell is a brother in law of defendant Seth Woods (but not the son in law of Mrs. Woods, as erroneously stated in our first opinion). Mrs. Woods and her son Seth talked with Lester Cantrell about her financial troubles. An agreement was reached, but it was not reduced to writing. The agreement, as pleaded by plaintiffs, was that Lester Cantrell promised Mrs. Woods and Seth that upon Mrs. Woods conveying the land and personal property to him he would refinance and pay her debts; hold title to the land and personal property for the benefit of Mrs. Woods and Seth until the land could be sold without sacrifice and at a sufficient price so that the incumbrances thereon could be paid off; that any balance so obtained and any profits arising from the operation of the farm or from the personal property would be divided equally between Mrs. Woods and Seth on the one hand and Lester Cantrell on the other. September 21, 1940 (date of agreement) Mrs. Woods, by warranty deed, conveyed the land to defendants and by bill of sale conveyed the personal property to defendant Lester Cantrell.

It was adjudged, by the judgment of September 15, 1945, that the warranty deed and bill of sale executed by Mrs. Woods were equitable mortgages, and it was adjudged: "That plaintiff Seth Woods be restored (he had been ousted by Lester) to the occupance and management thereof (the farm); that the rents and profits arising therefrom be divided equally between plaintiff and Seth Woods and the other plaintiffs herein on the one hand and Lester J. Cantrell on the other; that said Seth Woods continue in the management and control of said real estate until such time as a sale of said real estate shall be made; that upon the sale of such real estate the said Lester Cantrell shall be reimbursed the said sum of $5,982.00 (outlay of Lester Cantrell in paying the debts of Mrs. Woods); that any sum realized from such sale above said sum of $5982.00 be divided equally between plaintiff Seth Woods and the other plaintiffs on the one hand and Lester Cantrell on the other; that an accounting between the parties be had to determine the rents and profits realized from the operation of said real estate by said Lester Cantrell and divided as hereinabove set out."

June 13, 1947, after the mandate in the former appeals went down, defendants filed motion asking for sale of the land and for a final accounting. In the motion it was alleged that defendants had a bona fide written offer to purchase the land for $16,000.00 cash. The motion suggested that the offer be accepted by agreement, if such was possible, and that if no such agreement could be had, then that the court hear evidence as to value, and if found that the offer was a fair one and should be accepted, then that the court "order parties plaintiff and defendant to join in the execution of a proper deed of conveyance", and that if one or more of the parties should refuse

then that the court appoint a commissioner "to execute such deed" and that the net proceeds of the sale be impounded and held by the clerk of the court until a final accounting could be had. The motion was overruled.

June 23, 1947, plaintiffs filed motion to correct alleged irregularities in the judgment rendered September 15, 1945. There were five irregularities alleged, but the principal and decisive one was that the part of the judgment that any sum realized from the sale of the land above the $5982.00 be divided as appears in the portion of the judgment set out, supra. The disposition of this alleged irregularity will dispose of [615] all of the alleged irregularities. Plaintiffs, in their present appeal, contend that defendants are not entitled to receive any sum from the proceeds of the sale of the land above the $5892.00, plus interest thereon. It appears that plaintiffs, on October 13, 1947, tendered into court "for deposit therein the sum of $4,552.79 in full payment of defendants' equitable mortgage and interest to October 15, 1947." This amount was arrived at by taking the $5982.00 and figuring interest ($29.91) thereon at six percent from the date the referee (appointed after the mandate went down) commenced hearings on the accounting, making a total of $6,011.91, and deducting therefrom $1,492.12, the amount the referee found that defendants should be charged with in the accounting. Plaintiffs also, in their present appeal, contend that "the court erred in refusing plaintiffs' tender of payment of the amount of the (equitable) mortgage debt made to defendants and deposited in the registry of the court, and in holding that any tender, in order to be compatible with the judgment of September 15, 1945, must be the net amount of the mortgage debt, plus one half of the equity of redemption." Also, plaintiffs say that the court "erred in denying plaintiffs' request that they be permitted to redeem the real estate in question from the lien and encumbrance of the equitable mortgage."

The trial court, as stated, after the mandate in the first appeal went down, appointed a referee to take evidence on the accounting and make report to the court. The referee filed his report October 8, 1947. Both sides filed exceptions to the report, but these were overruled and the report approved. The referee in the accounting charged defendants (1) for depreciation of the buildings over and above natural wear and tear, $900; (2) for depreciation caused by neglect to repair fences, $100; (3) for not receiving full rental value, $360; and (4) for one half of $198.24, agreed profits, $99.12; total, $1,459.12. In their exceptions to the report of the referee defendants alleged that they should be charged only for one half of items 1, 2, and 3 as was done in item 4. After exceptions to the report of the referee were overruled, defendants filed motion to correct the accounting judgment so as to charge them with only one half of items 1, 2, and 3, together with the $99.12 in item 4, making a total of $779.12

instead of $1,459.12. This motion was also overruled, and defendants' present appeal is from the failure of the court to so modify the accounting judgment.

We first dispose of plaintiffs' appeal. They contend, first we may say, that to permit, as the judgment of September 15, 1945 does, defendants to receive more than the $5982.00 with interest (interest was adjusted in the accounting) from the proceeds of a sale of the land, would be given them a participating share in the equity of redemption. It is contended that such form of relief was not asked for and was ''not within the issues'' of count 2 of plaintiffs' petition ''upon which the judgment (of September 15, 1945) was based''; that such relief is coram non judice and void; that such relief is an irregularity patent on the face of the record and within the scope of irregularity mentioned in Sec. 1267 R. S. 1939, Mo. RSA, Sec. 1267.

Is that part of the judgment providing ''that any sum realized from such sale (of the land) above said sum of $5982.00 be divided equally between plaintiff Seth Woods and the other plaintiffs on the one hand and Lester Cantrell on the other'' not within the issues of count 2 of plaintiffs' petition as plaintiffs contend? Count 2 of the petition adopted by reference all of the 16 paragraphs of count 1. Count 2, prayer eliminated, is as follows:

''Count II (1) Plaintiffs here adopt by reference the allegations of paragraphs 1 to 16 inclusive of count I of this petition, and make the same, by reference, a part of this count; (2) plaintiffs state that by reason of the aforesaid premises said deed and bill of sale are equitable mortgages on said lands and personal property; (3) plaintiffs state that they have no adequate remedy at law and offer to do equity in the matter, and offer to redeem said lands and personal property.'' The prayer is set out, infra.

Paragraph 4 of count I of the petition, adopted in count II, set out the alleged [616] agreement between Mrs. Woods and Seth on the one hand and Lester Cantrell on the other, and contained the following: ''That as a part of said agreement defendant Lester Cantrell then and there promised Minnie Woods and Seth Woods that upon Minnie Woods' conveying said lands to him, and likewise transferring said personal property to him, he would, in this manner, refinance the proposition (Mrs. Woods' debts) and would hold the title to the said lands and said personal property for the benefit of Minnie Woods and Seth Woods until said lands could be sold without sacrifice and at a sufficient price so that the encumbrances thereon could be paid, and that *the balance* of the funds so obtained, and any profits or proceeds arising from the operation of said farm, or from said personal property, should be *divided equally* between Minnie Woods and Seth Woods on the one hand, and defendant Lester Cantrell on the other, and that in the meantime plaintiff Seth Woods was to operate said farm'' (italics ours).

Paragraph 4, as we read it, means that any balance from the sale of the farm or from profits arising from its operation or from the personal property, should be divided equally between Mrs. Woods and Seth on the one hand and Lester Cantrell on the other. The judgment directs that the division be between Seth Woods and "the other plaintiffs" on the one hand and Lester Cantrell on the other, but "the other plaintiffs" are those who became necessary parties after the death of Mrs. Woods.

The judgment of which plaintiffs complain and seek to modify by their present proceedings became final, as stated, on September 15, 1945, on the day it was rendered, because there was no effective appeal therefrom. The cause was in equity and plaintiffs alleged, by reference, facts in count 2 upon which the judgment was entered that support that part of the judgment of which they now complain. The dismissal of count I did not dismiss anything from count 2. Also, it appears from the record in the former abortive appeals that Seth Woods, in his evidence, testified to the effect that the contract between him and Mrs. Woods, his mother, on the one hand and Lester Cantrell on the other was that the land was to be sold and that any sum received therefor above the outlay of Lester Cantrell in paying Mrs. Woods' debts was to be divided equally between his mother and him on the one hand and Lester Cantrell on the other.

Plaintiffs say that they did not ask for any such relief in count II as given by that part of the judgment complained of. The prayer of count II follows: "Wherefore, plaintiffs pray that the court decree said deed to said lands and said bill of sale to said personal property be given effect and established as equitable mortgages, and to permit plaintiffs to redeem said property from said liens, and that title to said property be vested in plaintiffs; that an accounting be had between plaintiffs and defendants as to the income and profits arising out of the operation of said lands and produced from said livestock, and for the proceeds of any sale thereof, and that the court make restitution of said lands from defendants to plaintiffs, and for such other and further relief as to the court shall seem meet and proper."

So it appears that plaintiffs did not in terms ask for such relief, but they did ask for "such other and further relief as to the court shall seem meet and proper", and the able trial chancellor deemed it meet and proper to incorporate in the judgment that part now complained of. But the court was not circumscribed by the prayer; the prayer is no part of a petition. Caldwell v. Eubanks, 326 Mo. 185, 30 S. W. (2d) 976, 72 ALR 621; State ex rel. Bowling Green Trust Co. v. Barnett, 245 Mo. 99, 149 S. W. 311; Willett v. Farm Mortgage & Loan Co. (Mo. App.), 263 S. W. 234. When a court of equity is rightfully possessed of a case it will not relinquish jurisdiction short of doing complete justice between the parties. Rockhill Tennis

Club v. Volker, 331 Mo. 947, 56 S. W. (2d) 9, l. c. 20; Selle v. Selle et al., 337 Mo. 1234, 88 S. W. (2d) 877, l. c. 883. And in endeavoring to do complete justice the equities of all parties will be adjusted. Lustenberger v. Hutchinson, 343 Mo. 51, 119 S. W. (2d) 921, l. c. 929. In the judgment of September 15, 1945, the court found "that [617] plaintiffs have solemnly pleaded and asserted and by sworn testimony confirmed the agreement (between Mrs. Woods, Seth and Cantrell) heretofore set forth; that in equity and good conscience they should stand ready to carry out and perform the same."

. Plaintiffs, as appears, say that to permit defendants to participate in the proceeds from a sale of the land permits them to share in the equity of redemption and is inconsistent with that part of the judgment that the deed of Mrs. Woods to Lester Cantrell was adjudged to be an equitable mortgage. The equitable mortgage secured Lester Cantrell for his outlay in discharging the debts of Mrs. Woods, and when the agreement was entered (September 21, 1940) that part of the agreement permitting Lester Cantrell to participate in the equity of redemption was a part of the agreement according to plaintiffs' petition and their evidence and was a part of the consideration for Lester Cantrell discharging these debts. Hence plaintiffs, as the trial court found, "should stand ready to carry out and perform" the agreement and we so rule. Such ruling, we think, disposes of all questions raised in plaintiffs' present appeal.

As appears, supra, the trial court overruled defendants' motion to sell the land, but in making disposition of the questions presented the court ordered the land to be sold by the sheriff and that the sheriff "make proper report to the court." And we might say that the court found that the fair market value of the land was "approximately $22,500.00 as mentioned in the referee's report filed October 8, 1947."

█ On defendants' appeal. As appears, supra, defendants in the accounting were charged to account for $1459.12 made up of (1) depreciation of buildings over and above natural wear and tear, $900; (2) for depreciation by neglect to repair fences, $100; (3) for not receiving full rental value, $360; and (4) for one half of $198.24, agreed profits, $99.12. As stated, supra, defendants filed motion to correct the accounting judgment so as to charge them with only one half of items (1), (2), and (3), together with the $99.12 in item 4. In the brief, in support of their motion, defendants say:

"By the terms of the final judgment rendered September 15, 1945, plaintiffs, as one group, and the defendants as the other group, were to share equally in the rents and profits from the farm as well as from all the farm should sell for above $5982.00. Hence, it was error for the referee, in the first instance, and the court in the second, to charge the defendants with the full amount, instead of one half, of the depreciation items of $900 and $100, and rent that should have

been collected in the amount of $360. If the depreciation had not occurred the profit on the sale of the farm would be $1,000.00 greater, but under the judgment of September 15, 1945, the defendants would be entitled to one half, or $500.00 of said $1,000.00. The same is true of the $360.00 rent not collected. Had the farm been rented for $360.00 more than it actually was, the defendants would have been entitled to one half of it, or $180.00, and the plaintiffs to the other half, only."

In what is termed in the record as the "judgment in extenso", which includes disposition of the accounting issues, the court found that "plaintiffs owe defendants $5982.00, the amount of the equitable mortgage"; that "defendants are chargeable with the amount of $1459.00 (the referee had it $1459.12) for waste and mismanagement"; that "any amount of money realized (from the sale of the land) over and above $5982.00 (two years interest at six percent was allowed defendants in adjusting the profits item), less $1459.00, be divided equally between the plaintiffs and defendants as per judgment" of September 15, 1945.

We think that the trial court's disposition of the accounting issues is correct. The fallacy of defendants' reasoning as to the accounting lies in the assumption that they are charged with the whole of what we may term the accounting judgment—$1459.00. This is not the case, because the lesser the amount is after deducting the accounting judgment from defendants' [618] equitable mortgage, the greater the amount will be for division after paying to defendants the balance on the mortgage. In the "judgment in extenso" the trial court reserved jurisdiction "to make any future orders necessary for final determination of this case."

The judgment on plaintiffs' motion to correct the judgment of September 15, 1945, should be affirmed, and the judgment on defendants' motion to correct the accounting judgment should also be affirmed. It is so ordered, and the cause is remanded. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by Bradley, C., is adopted as the opinion of the court. All the judges concur.