Everett VANNORSDEL, Appellant,

v.

E. B. THOMPSON, Respondent.

No. 22920.

Kansas City Court of Appeals.

Missouri.

Feb. 2, 1959.

L. E. Atherton, Milan, Rendlen & Rendlen, Hannibal, Errol Joyce, Brookfield, for appellant.

M. E. Montgomery, P. M. Marr, Milan, for respondent.

BROADDUS, Presiding Judge.

This case was transferred to us by the Supreme Court. The reason for the transfer, as well as the facts of the case and the questions presented clearly appear in that Court's opinion as follows:

"In October 1950 the plaintiff and defendant entered into a contract for the operation of a farm. The term of the agreement was from October 1, 1950 to August 1, 1951, and from year to year thereafter unless written notice to terminate was given by either party to the other at least two months prior to the beginning of the succeeding year. In general, defendant was to furnish the land and plaintiff was to operate the farm; they were to furnish equally the working capital, and the profits and losses were to be shared equally. Defendant loaned plaintiff the money to pay for a substantial part of his share of the working capital which was used to purchase equipment and livestock. Seven different notes were given by plaintiff to defendant. After certain credits were made, the balance due on all these notes on November 17, 1951, was $71,226.63. Plaintiff gave defendant a note for this amount due on December 31, 1951, and all the old notes were cancelled. The joint farming venture was terminated by defendant in the early part of 1952. A dispersal sale was held on March 21 of that year, and as the result of the proceeds received from the sale and from other sources, plaintiff's note was credited with a total of $54,841.21, leaving an unpaid balance on the principal of $16,385.42.

"This suit was filed on October 1952. Plaintiff sought damages for the alleged wrongful termination by defendant of the joint enterprise prior to August 1, 1952, and upon this submitted issue the jury returned a verdict for plaintiff in the amount of $28,000.

"Defendant filed a counterclaim on the above referred to note. The trial court sustained a motion for a directed verdict in favor of defendant on the counterclaim, and as stated in the judgment, 'the issue as presented by the counterclaim of defendant on the note * * * (was) withdrawn from the jury and judgment * * * entered by the court on defendant's counterclaim on said note in favor of defendant and against plaintiff in the amount of $22,019.94, principal and interest * * * and for attorney's fees in the amount of $2,201.99.' The trial court then offset against the $28,000 the sum of $24,221.93 and rendered judgment in favor of plaintiff and against defendant in the amount of $3,778.07. Plaintiff has appealed from the judgment, but in the notice of appeal he states that he is 'not appealing from the verdict of the jury in his favor for $28,000.' Defendant has not appealed.

\* \* \* \* \* \*

"Plaintiff has separately set forth ten statements in his brief under the caption of points and authorities. For the most part they consist only of abstract statements, and half of them have no citation of authority. It is difficult to determine therefrom precisely what actions or rulings of the trial court plaintiff seeks to have reviewed and wherein and why they are contended to be erroneous. However, without commenting separately upon each of the various statements, we find from them and the other contents of plaintiff's brief and from the record that (a) plaintiff does not contest any issue pertaining to the verdict and judgment in his favor of $28,000 based on his suit for the alleged wrongful termination of the joint enterprise; (b) he admits the execution by him of the note for the face amount of $71,226.63; and (c) he admits that on August 1, 1952, the date the joint enterprise was supposed

to terminate, he owed $18,214.66 principal and interest on the note. * * *

"Plaintiff contends that in his petition he pleaded that the note had been paid by 'credits and offsets'; that 'by the verdict of the jury (in the suit for wrongful termination of the joint enterprise) it was found, as shown by the instructions, that on August 1, 1952, defendant was indebted to plaintiff in the sum of $28,000;' and, therefore, the trial court erred in taking from the jury the issue of whether the note was paid as of August 1, 1952, by offsetting against the amount due thereon the $28,000 which the jury found that defendant owed plaintiff as damages for the wrongful termination of the joint venture. In his brief plaintiff sums up his contentions as follows: 'Thus it appears that on August 1, 1952, defendant owed plaintiff $28,000 and plaintiff, by defendant's own evidence, owed defendant $18,214.66. This results, by offsetting one debt against the other, in a balance due plaintiff in the sum of $9,785.34. Or stated in another way, this results in the payment of all debts which plaintiff owed defendant as of August 1, 1952, and a balance due plaintiff from defendant of $9,785.34 as of August 1, 1952. And the trial court was in error in allowing interest from August 1, 1952, to date of trial July 17, 1956, 3 years, 11 months and 17 days (later), for on August 1, 1952, there was nothing due defendant. Likewise, the allowance of an attorney fee under the provisions of the note was error, for, as we have shown, the note was fully paid, and more, on August 1, 1952.'

"If plaintiff is correct in his contentions the trial court erred in allowing interest on said note subsequent to August 1, 1952, in the amount of $3,805.28, and in allowing attorney fees in the amount of $2,201.99 before offsetting against the $28,000 the amount due to defendant from plaintiff. If plaintiff should prevail as to every contention he makes on this appeal the net result is that the court should have offset $18,214.66 against the $28,000 judgment in favor of plaintiff, and then rendered final judgment in favor of plaintiff in the amount of $9,785.34, instead of $3,778.07 as was done. Therefore, the actual amount in dispute between the parties is $6,007.27, which is less than the amount necessary to vest appellate jurisdiction in this court."

■ Was the trial court in error in allowing interest on the note to the date of the trial? We think not. It appears that the courts determined at an early date that where an action is brought on a liquidated claim, such as a promissory note or stated account, and defendant counterclaims on an unliquidated demand, the plaintiff is entitled to have the interest figured on the note or liquidated claim up to the date of judgment. There is no reason why the same rule should not also apply to the converse situation—where a liquidated claim, such as a promissory note, is asserted as a counterclaim against an unliquidated claim for damages.

In Stephens v. Burgess, 69 Mo. 168, the plaintiff purchased a dwelling house, paying partly in cash and part by note subsequently paid. The deed was made direct to defendant, who verbally agreed with the plaintiff to repay him the price with interest. In a suit by plaintiff to enforce a vendor's lien, the defendant pleaded a counterclaim, consisting of items for legal services, money paid and the price of land sold to the plaintiff. The trial court allowed the defendant's counterclaim, and also allowed the plaintiff interest on the purchase price of the house, at the rate of six per cent *from the date of his purchase to the day of trial,* and offset one claim against the other.

The question in the case was the propriety of the allowance of the interest. Our Supreme Court said, loc. cit. 170: "We are all of the opinion that the judgment of

the Circuit Court in allowing the plaintiff interest was right."

The reasons given by the courts in support of the above rule are clearly stated in an early Oregon case, that of Smith v. Turner, 33 Or. 379, 54 P. 166, 167. In that case a counterclaim for unliquidated damages was interposed to an action on a note and it was held that this counterclaim, *even when finally determined and allowed,* did not cut off the recovery of interest on the note to the time of judgment. The court stated:

"The plaintiff's claim bears interest because there is a contract to pay it, while, under the rule announced, the defendants' counterclaims do not; but it is attempted to counterclaim as respects the first separate defense as of the date when it is alleged the damages accrued, and thereby cut off the running of interest upon the note. This cannot be done, however, because it required the verdict of the jury, or at least the confession or default of the plaintiff, to liquidate the defendants' demand for their alleged damages arising by reason of plaintiff's supposed breach of contract, *while the note draws interest by force of its direct stipulations."*

We rule the contention against plaintiff.

■ The remaining question is, did the trial court err in allowing defendant an attorneys fee in the amount of $2,201.99. The note provided that in the event it was "placed in the hands of an attorney for collection, then an additional amount of ten per cent on the principal and interest unpaid shall be added for collection fee." Since plaintiff in both his petition and reply alleged that the note was paid, it was necessary that defendant file an independent suit by way of a counterclaim on the note, and in order to do that he had to employ attorneys. The question is specifically ruled in defendant's favor by our Supreme Court in the case of Yarbrough v. W. A. Gage & Co., 334 Mo. 1145, 70 S.W.2d 1055:

In that case the plaintiff had executed two notes, one for $8,000 and one for $10,000 to the defendant, secured by a deed of trust. As a part of the same transaction the plaintiff and defendant entered into a cotton contract for the handling of cotton. When the notes were past due the defendant started foreclosure of the deed of trust. The plaintiff, the maker of the notes, brought an action to enjoin the foreclosure, contending that he did not owe the notes because the defendant had violated the cotton selling agreement and pleaded that the defendant was indebted to plaintiff for damages in the sum of $10,000 or more for failure to sell cotton according to the terms of the contract. The defendant denied that the notes had been paid and denied its violation of the contract. The court took an accounting, and found, after allowing certain credits, there was a balance due on the notes in the sum of $11,209.69 with interest. The court refused to allow the ten per cent attorney's fee provided in the notes. Both sides appealed.

On appeal it was assigned as error the failure and refusal of the trial court to allow the item of attorney's fee as provided for by the terms of the notes involved. The plaintiff contended that he was entitled to an offset or credit upon the notes for damages on the grounds set out. The Supreme Court held that the trial court erred in not assessing the attorney's fee as the notes provided, saying, 334 Mo. loc. cit. 1067, 70 S.W.2d loc. cit. 1067:

"By this suit defendant was compelled to meet these issues, sustain the validity of the notes, *and enforce same by resisting plaintiff's various claims for credits or offsets and establish its right to recover thereon. To do so, defendant necessarily was required to employ attorneys to represent it.* Each of the notes provide: 'If this note is not paid at maturity and is placed with an attorney for collection * * * I agree to pay all costs incurred by the holder in collecting or enforcing the same including a fee of ten per cent on amount

due for attorney's fee.' *We think the necessity of employment of attorneys by defendant to defend this action, maintain the validity of the notes, resist plaintiff's claims as to offsets and credits due which he alleged he was entitled, and enforce the obligation of plaintiff thereon comes within the contemplation and meaning of terms above quoted.* * * * The judgment should therefore be further amended so as to assess an attorney's fee in favor of defendant of 10 per cent of the amount due, as aforesaid, on said notes as of July 1, 1929." (Italics ours.)

The judgment is affirmed. All concur.