James **CANNON** and Jewell Cannon, husband and wife, Plaintiffs-Appellants,

v.

**O. J. BINGMAN** and Winnie B. Bingman, husband and wife, Defendants-Respondents.

No. 8304.

Springfield Court of Appeals.

Missouri.

Oct. 16, 1964.

Harry H. Kay, Robert J. Quigley, Eldon, for plaintiffs-appellants.

Theodore G. Scott, Buffalo, Gordon R. Boyer, Lamar, for defendants-respondents.

RUARK, Presiding Judge.

This is an appeal by plaintiffs from a decree in their favor on their petition for re- scission, cancellation, and return of the pur- chase price which decree, however, allowed the defendants-respondents the sum of $5,900 as the reasonable rental value of the property while in plaintiffs' possession. For convenience and clarity the plaintiffs- appellants Cannon will be referred to as "Buyers," and the defendants-respondents Bingman will be referred to as "Sellers." The case has been before this court in Can- non v. Bingman, 354 S.W.2d 894, where the facts are stated in detail; but in order to clarify the questions here we must restate some of the facts.

Sellers owned what is called "The Red Diamond Resort," which consisted of prop- erty with apparent frontage on the Lake of the Ozarks. Upon such property was situate a four-room house and five cabins. We do not have the age of the resort, but apparently it had had a succession of own- ers since 1946. Buyers got in contact with one Meissner, Sellers' agent, who showed the property, including what he *said* were the property lines; and the upshot was that on May 20, 1958, the Buyers entered into a contract to buy the resort at a price of $32,500 and at that time paid $500 as earnest money. On June 26, 1958, Buyers paid a further sum of $8,500 and executed a note and deed of trust for $23,500. Some delay was occasioned in closing the paper trans- action due to difficulty in getting the right description (apparently a survey was re- quired for this purpose), but Buyers went into possession on July 1, 1958, although they did not then have a deed. All the paper transactions in respect to the sale took place in the office of Meissner (Sellers' agent), who handled the transaction.

After taking possession, Buyers learned that the Red Diamond might be an imper- fect jewel, for an adjoining neighbor claimed to own some of the property which Buyers had contracted to buy. The actual difference or dispute was based on the loca- tion of the property lines which had been represented to the Buyers. If the lines were as the neighbor claimed, Buyers' property did not include a road and a portion of the

land; and the effect of such was that, if the claim was correct, Buyers did not get a substantial portion of the shore line. After hearing of this apparent discrepancy, the Buyers went back to the agent and finally to the Sellers in order to get the matter "straightened out." They wanted a survey. This dragged on with no results. Buyers did not accept a deed, but a deed was made (dated June 18, 1958, acknowledged June 20, 1958), recorded (on July 3, 1958, in Book 110, at page 411), and mailed to Buyers some time after that. On December 26, 1958, an installment of principal and interest became due and, in order to avoid default on the note and mortgage pending getting the matter straightened out, Buyer paid Sellers $900 on the principal and $585 as interest. Thereafter, the Buyers brought suit for rescission alleging misrepresentation as to the property lines and no adequate remedy at law. The petition prayed for cancellation of the contract, warranty deed, promissory note, for judgment in the sum of $9,900 (the amount of principal theretofore paid), and for the sum of $2,840 representing lost profits. It concluded with a prayer for general relief. Sellers answered, and on trial of that case the circuit court denied relief. Appeal was taken, and in Cannon v. Bingman, Mo.App., 354 S.W.2d 894, we held in substance that the evidence was clear and convincing that Sellers' agent did misrepresent a material fact as to the actual boundary line; that such misrepresentation affected the value of the property (thought to be) involved; and that Sellers were chargeable with such misrepresentations. In that case we called attention to the fact that Sellers had had use of Buyers' money during the entire time, but the record was so incomplete as to the earnings and reasonable value of the property while Buyers were in possession that no determination could be made in respect thereto; and the cause was reversed and remanded for retrial in accordance with the suggestions made.

Immediately prior to the present trial, Seller filed his amended answer, which consisted of a denial of plaintiffs' allegations and claim of ownership of the disputed property by virtue of adverse possession for more than ten years. The answer also averred that on March 26, 1960, the mortgage deed of trust herein referred to had been foreclosed and that Sellers had (again) become the owners by virtue of purchase at such foreclosure sale; that Buyers had refused to deliver possession to Sellers, that the reasonable monthly rental value of the premises was $2,500 per month, that Buyers had committed waste in the sum of $7,500. The *prayer* was judgment for rents and profits and use of premises *from March 26, 1960,* and judgment for waste. There was no prayer for general relief.

In retrying the case the parties fairly well covered the waterfront (in this instance we should say lake front). They tried anew (or at least offered evidence concerning) the question of misrepresentations, location of boundary lines, adverse possession, earnings (or loss) of Buyers while in possession, and earnings of Sellers after they went back into possession.[1] Income taxes, reports, and accounts of both parties were gone into. Apparently both parties regarded the retrial as an action in accounting. Respondents' counsel so stated at the trial. The evidence of the *earnings* of the parties during the periods involved is completely confusing. About all we get from it is that the Buyers made no actual *profit* while in possession but the premises had some rental value.

After listening to the welter of evidence, disagreements and arguments, the court on August 22, 1963, filed its "Memorandum" in which it found:

"While it is true that Mr. Vincent's second survey does not show the north property line to be as far south as shown by his incomplete survey, yet in

1. It is conceded by all parties to have been June 5, 1960, when Sellers went back into possession, and, therefore, the period they were out of possession after foreclosure was two months and eleven days.

my opinion said surveyor's testimony does show that the north line is not at the fence as represented by defendants through their agent, Frank Meissner, and is not in the center of the present road. Therefore the court concludes that defendants, through their said agent, made the representations as to the north boundary line of the property as claimed by plaintiffs, that is, that the fence was the north line and that the present road and the parking area were located on said resort property. The Court finds and concludes that said representations were false, that the north boundary line is not along the fence and that it is not at the center of the present road, but is south of it. The Court further finds that said representations concerned material facts and that they induced the plaintiff to enter into the contract of sale.

"In regard to what allowance, if any, defendants should receive as rental of the resort property during the time plaintiffs had possession of it from July, 1958, to June, 1960, there is proof in the record which justifies a deduction from the amount of $9,900.00 paid by plaintiffs to defendants on the contract of sale. Defendant O. J. Bingman testified that the reasonable rental value of the property per year was $3,500.00, that he was offered $2,800.00 for one year's rent but refused it. The undisputed evidence shows that plaintiffs purchased the property for $32,500.00 and that they stated in their income tax returns that the buildings were worth $30,000.00. Therefore, the Court finds the reasonable rental value of the resort to be $5,900.00 for the period it was occupied by plaintiffs and allows that sum for the use of the property by plaintiffs during the time they were in possession of it.

"With reference to plaintiffs' claim in their trial brief for interest on the amount they claim to be due from defendants, I have searched the pleadings and do not find that they have prayed for interest; moreover, since the damages are unliquidated in that it was not known how much defendants would be allowed as rent for the property and because in an equity case the allowance of interest is usually a matter for the chancellor's discretion (Boyle v. Crimm [363 Mo. 731], 253 S.W.2d 149) it is my opinion that under the facts in this case interest should not be allowed.

"WHEREFORE, the issues on plaintiffs' first amended petition are found for plaintiffs and the amount of their recovery is assessed at $4,000.00. Judgment is entered for plaintiffs against defendants for $4,000.00 and said judgment is declared to be a special lien against the right, title and interest of the defendants in and to the real estate described in the warranty deed attached as an exhibit to plaintiffs' first amended petition.

"The issues on defendants' counterclaim are found for plaintiffs and the counterclaim is dismissed."

On this appeal the sole question presented by the appellants, to quote their brief exactly, is "The court should allow appellants to recover interest on the sums which the chancellor found they were entitled to recover from respondents." We do not, therefore, concern ourselves with the allowance of $5,900 to respondents as and for rents and profits, although we confess our inability to determine how the trial court arrived at such figure. Neither are we concerned with the $585 which appellants paid the respondents as interest (December 1958), because the contention here is only as to "interest on the sums *which the chancellor found* they were entitled to recover." This, therefore, would be interest on the sum of $9,900 represented by payments of $500 made May 20, 1958, of $8,500 made June 26, 1958, and of $900 on the principal made December 26, 1958.

Appellants contend that since the court found Sellers-respondents to have been the

wrongdoers and ordered the repayment of the sums obtained by that wrongdoing, it would be inequitable to permit them to have the benefit of both the value of the use of the premises and the use of the money during the period involved. The respondents' contentions more or less follow the reasons offered by the court, (a) plaintiffs did not pray for interest, (b) interest could not be allowed because the amount was unliquidated, and (c) interest is at the discretion of the chancellor. We will deal with the questions in that order.

 As to the failure to pray for interest: The plaintiffs did not make a specific request for allowance of interest. They *did* incorporate a prayer for general relief—"such further orders and judgments as shall be meet and proper in the premises." The prayer is not strictly a part of the pleading and does not bind a court of equity. A general prayer for relief permits the balancing of all the equities which are within the scope of the pleadings and the evidence; for once rightfully in possession of a case the court will not relinquish it short of doing complete justice, so that there may be a full and complete determination of the rights and liabilities of the parties in respect to the controversy involved.[2]

In this case we find, as stated, the plaintiffs requested general relief. Not so with the defendants. The prayer of their amended answer requested judgment for rents and profits and use of the premises from March 26, 1960 (the date of foreclosure), and, if defendants are to be held strictly to *their* prayer for rents and profits, they would be entitled to recover for the use of premises from March 26, 1960, to June 5, 1960, the admitted date plaintiffs surrendered possession. If the allowance of $5,900 was intended to encompass the reasonable rental value for such period of two months and eleven days, it would be ridiculous under the evidence; but it is obvious that the court allowed such sum for the full period defendants were out of possession—namely, twenty-three months. Thus the court has allowed the Sellers a reduction or offset for a period not prayed for in the amended answer, while denying the Buyers any reduction in this amount for use of money during the period because *not specially prayed for*. We think that the allowance of interest was within the general purview and scope of the pleadings and the evidence.

 As to (b), whether the sum was liquidated. It is a general rule that interest cannot be recovered on an unliquidated sum.[3] But an amount is sufficiently liquidated for the purpose of allowing interest if the amount is readily ascertainable by computation or determination according to a recognized standard.[4] In any event the right of one party to recover interest on a liquidated sum is not necessarily dependent upon the fact that all of the *other* parties' claims may be liquidated.[5] We see no difficulty in computing interest on the sums here involved. The sums and dates as heretofore stated are definite and fixed.

2. 30 C.J.S. Equity § 607, p. 1001; Woods v. Cantrell, 358 Mo. 1006, 218 S.W.2d 613, 616; Wenzelburger v. Wenzelburger, Mo.App., 296 S.W.2d 163; Kleber v. Carlos, Mo., 202 S.W.2d 865, 869; McQuitty v. Steckdaub, Mo., 190 S.W. 590, 592; Homan v. Employers Reinsurance Corp., 345 Mo. 650, 136 S.W.2d 289, 301, 127 A.L.R. 163; see Gibson v. Shull, 251 Mo. 480, 158 S.W. 322, where interest was adjudged although not prayed for.

3. St. Louis Housing Authority v. Magafas, Mo., 324 S.W.2d 697; Wolfersberger v. Miller, 327 Mo. 1150, 39 S.W.2d 758 (16).

4. 47 C.J.S. Interest § 19b, p. 31; Eastmount Const. Co. v. Transport Mfg. & Equip. Co. (8th Cir.), 301 F.2d 34; Laughlin v. Boatmen's Nat. Bank of St. Louis, 354 Mo. 467, 189 S.W.2d 974, 979; Wolfersberger v. Miller, 327 Mo. 1150, 39 S.W.2d 758, 765.

5. Vannorsdel v. Thompson, Mo.App., 323 S.W.2d 252; Eastmount Const. Co. v. Transport Mfg. & Equip. Co. (8th Cir.), 301 F.2d 34(12).

Boyle v. Crimm, 363 Mo. 731, 253 S.W.2d 149, was cited by the trial court in its memorandum and by respondents here as authority for the proposition that allowance of interest is "generally a matter for the chancellor's discretion." That case involved the question of the purpose and intent of the parties in regard to the assignment of insurance policies (whether absolutely or as security). No wrongdoing was involved. The case was decided on the basis of *contractual liability,* and it was the opinion of the court that the evidence justified the conclusion that there was no actual agreement, or one which could be implied from the circumstances, that interest was to be paid, but that in fact the circumstances indicated the intention was to contrary. On the other hand, Parsons v. Third National Co., Mo.App., 124 S.W.2d 630, involved the improper handling of a brokerage account and retention of certain stocks or the proceeds therefrom. Interest was allowed. A general rule seems to be that if money is wrongfully or fraudulently obtained or withheld the law raises an artificial implied promise to pay interest from the date the money is wrongfully obtained.[6] It is also held that where a wrongful act is involved, interest is recoverable as a part of the damages. Thus, in cases, including rescission, based on fraudulent representations.[7]

As was said in Brown v. Home Development Co., 129 N.J.Eq. 172, 18 A.2d 742, 746 (quoting from earlier cases):

" * * * 'It should be borne in mind that the whole tendency of courts of law and courts of equity for a considerable period of time has been to break away from hard and fast rules and charge and allow interest in accordance with principles of equity, in order to accomplish justice in each particular case.' "

We do not wish to rest our decision upon any technical rules which have grown up involving interest. Equity will not suffer a wrong without a remedy. It is elastic in that it looks to the substance rather than the form and will never be applied to reach an inequitable result or permit itself to be frozen into a position of applying mechanical rules so that it becomes crystallized. It contrives its remedies so that they will correspond to the primary right of the injured party and to the wrong by which that right has been violated. It preserves its flexibility and expansiveness in order to meet the requirements of every case. Clark on Equity (Mo.Ed.), Sec. 32, p. 36; 1 Pomeroy's Equity Jurisprudence, Sec. 111, p. 125; 19 Am.Jur., Sec. 123, p. 123; Merrick v. Stephens, Mo.App., 337 S.W.2d 713, and cases at 719. See Gibson v. Shull, 251 Mo. 480, 158 S.W. 322. This is a case where the Sellers have been found to be wrongdoers, the transaction has been rescinded and cancelled, and the court has endeavored to restore the status quo. In such a situation, the "interest" on the moneys paid is not necessarily interest *eo nomine* but simply a measuring stick to determine the reasonable value of the use of the purchase money during the period it was in possession of the Sellers. If the wrongdoers be allowed (as they were in this case) the reasonable rental value of the premises during the period Buyers were in possession of the real estate, then simple justice and equity requires that the injured parties be entitled to the reasonable rental value of the purchase money while it was in the possession of the Sellers. Any other result would accomplish a lopsided status quo; and if the ruling of the trial court which accomplished this result was an act of discretion, then we think it was a discretion not fairly or equitably exercised. However, we are inclined to believe that the judgment denying such credit was based on or greatly influenced by

6. 47 C.J.S. Interest § 13, p. 23; Napoleon Hill Cotton Co. v. Stix, Baer & Fuller Dry Goods Co., 203 Mo.App. 25, 217 S.W. 323; Thompson v. W. C. Howard Motors Co., 122 Kan. 339, 252 P. 468.

7. Schroeder v. Zykan, Mo.App., 255 S.W. 2d 105(6); Arthur v. Wheeler & Wilson Mfg. Co., 12 Mo.App. 335, 341; see Wolfersberger v. Miller, 327 Mo. 1150, 39 S.W.2d 758.

mistake of law in respect to the necessity of praying for a specific credit, and in respect to what constitutes a liquidated claim. Under these circumstances it was not a true exercise of discretion on the part of the chancellor. See State ex rel. State Highway Comm. v. Bloomfield Tractor Sales, Inc., Mo.App., 381 S.W.2d 20.

An equity case we try de novo, giving due deference and regard to the judgment of the chancellor who heard the witnesses in respect to credibility, and render such judgment as should have been rendered. It is our conclusion that the amount of $5,900 allowed the respondents for rental value of the premises while in possession of the appellants should be reduced by the sum of $3,038.41, which is an amount corresponding to interest at six per cent on the three payments of principal made from date of such payments until date of judgment below. The judgment is reversed in part and remanded with direction that it be modified so as to accord with the views herein expressed.

STONE and HOGAN, JJ., concur.