James E. **BOSWELL**, Plaintiff-Appellant,

v.

C. Don **BRINCKMANN**, Defendant-Respondent.

No. 10528.

Missouri Court of Appeals, Southern District, Division Two.

April 2, 1979.

David E. Wilhite, Donnelly, Baldwin & Wilhite, Lebanon, for plaintiff-appellant.

William Icenogle, Icenogle & Icenogle, Camdenton, for defendant-respondent.

MAUS, Judge.

This action was brought by the plaintiff to "undo" his purchase of 70 shares in Don's Boat and Motor Company (Don's) for $7000. Don's was a closely held corporation with the defendant holding substantially all of the shares. It engaged in the marina business and plaintiff was a long time customer. He was on a friendly basis with defendant who actively ran the business. The petition is in two counts. In Count I the plaintiff alleged misrepresentation of the financial condition of Don's and prayed for rescission, the return of the purchase price, interest from the date of the transaction, costs, punitive damages of $10,000 and general relief. In Count II, in the alternative, the plaintiff alleged a subsequent promise to repurchase for $7000 and prayed for judgment for $7000, interest from the demand of repurchase, costs, and general relief. The trial court found the issues on Count I in favor of the plaintiff and decreed rescission and the payment of $7000 upon tender of the endorsed certificate for the shares. The prayer for interest and punitive damages was denied. Count II was dismissed. Plaintiff appeals and asserts error in the denial of interest and punitive damages.

In view of the limited issues presented, only a summary of the evidence is neces-

sary. On December 7, 1967, by letter the defendant offered the 70 shares for $7000. The plaintiff requested a financial statement. Defendant supplied a statement dated December 31, 1966. The statement listed as an asset a note for $25,000 of Lakeland Meat Company (Lakeland), another closely held corporation in which defendant's father was involved and which was known to be in financial difficulty. When questioned, defendant assured the plaintiff Don's was then in substantially the same financial condition as shown on the almost year old statement and that defendant would personally pay the Lakeland note. The purchase was completed December 22, 1967.

Later the plaintiff did receive a December 31, 1970, financial statement. This statement showed adverse financial developments, including a reduction in retained earnings from plus $6,534.88 as shown on the December 31, 1966, statement, to a minus $57,989.00 as shown on the 1970 statement. No dividends were paid. Nevertheless, the plaintiff took no action until after the defendant sold all of his stock to a third party corporation on October 12, 1971. He then attempted to sell his stock to the third party corporation with the personal guarantee of the owner. When this was unsuccessful, he later made demand upon the defendant.

Relative to the misrepresentation, the evidence developed that the December 31, 1966, financial statement listed the notes payable indebtedness of Don's for Lakeland as $25,000 when in fact it was $62,000. The statement did not disclose the fact Don's had acquired substantially all of the stock of Lakeland and assumed its liabilities. An attempt to revive Lakeland was unsuccess-

ful and it was liquidated and debts paid by Don's. To the defendant's credit, upon the sale to the third party corporation, by way of cancellation of indebtedness, defendant and his father contributed approximately $29,000 to the capital of Don's. At defendant's instance, the sale contract provided in the event of liquidation of Don's, the minority shareholders could exchange their shares for preferred stock of the third party corporation or its deferred obligation at 5% interest to purchase such shares for the amount of the original investment.

▆▆▆ Concerning punitive damages: Neither party requested and the court did not make findings of fact or a statement of the grounds of its decision. Even though the judgment granted in part and denied in part the relief sought by plaintiff, all fact issues must be considered "as having been found in accordance with the result reached." Rule 73.01. The judgment will be affirmed if it can be sustained on any reasonable theory supported by the evidence. *Corley v. Kiser*, 556 S.W.2d 218 (Mo.App.1977).

▆▆▆ Nevertheless, the plaintiff argues that the judgment of rescission required a finding of intentional or reckless misrepresentation implying legal malice, and therefore punitive damages *must* be awarded. (Emphasis ours). We need not decide whether or not punitive damages may be awarded in an action in equity.[1] Nor, need we decide if a purchaser who elects to rescind and does not seek actual damages can ever recover punitive damages.[2] Even assuming the plaintiff established, and the court found, facts upon the basis of which the court could have awarded punitive damages, it does not follow that the court was

---

1. The proposition was noted but not decided in *Bellerive Country Club v. McVey*, 365 Mo. 477, 284 S.W.2d 492 (banc 1955). "Further, under Missouri law, in suits for injunction, as an adjunct to equity jurisdiction, actual and punitive damages may be recovered." *Martin v. Swenson*, 335 F.Supp. 765, 768 (W.D.Mo.1971). "Even if the sum allowed be considered as exemplary damages (the allowance of which by an equity court is at least a matter of doubt, and which, in any event, are allowable only if

actual damages be found . . . ." *Thompson v. Hodge*, 348 S.W.2d 11, 15 (Mo.App. 1961).

2. The plaintiff neither sought nor was awarded actual damages, as distinguished from restitution. An award of actual damages is said to be a prerequisite to punitive damages. *Coonis v. Rogers*, 429 S.W.2d 709 (Mo.1968); *Koenig v. Skaggs*, 400 S.W.2d 63 (Mo.1966).

required to award punitive damages. "[E]ven in a situation where the imposition of punitive damages may be permissible and proper 'principally as punishment of the wrongdoer and to deter others from committing like torts' [*Carmody*, supra, 122 Mo.App. loc. cit. 349, 99 S.W. loc. cit. 498], the granting or withholding thereof must be left wholly to and within the discretion of the triers of the facts." *Simmons v. Jones*, 361 S.W.2d 860, 866 (Mo.App.1962). "It is, however, the law in Missouri that the allowance of punitive damages is always discretionary." *Bellerive Country Club v. McVey*, 365 Mo. 477, 493, 284 S.W.2d 492, 503 (banc 1955). "Such damages are never allowable as a matter of right and whether or not the same are awarded lies wholly within the discretion of the trier of the facts." *DeBow v. Higgins*, 425 S.W.2d 135, 143 (Mo.1968).

While we do not know the exact reason the trial court denied punitive damages, if indeed a reason is necessary, which we doubt,[3] there are numerous circumstances the court could have considered as mitigating. *DeBow v. Higgins*, supra. That portion of the judgment denying punitive damages can be sustained on a reasonable theory and was not erroneous.

■ Concerning interest: By finding the issues upon Count I in favor of the plaintiff the trial court necessarily determined the defendant misrepresented (either knowing his representations were false or not knowing if they were true or false) the financial condition of Don's. The evidence compels such a determination. It has been uniformly held that upon rescission under such circumstances the purchaser is entitled to interest from the date of payment. *Johnson v. Mercantile Trust Company National Ass'n*, 510 S.W.2d 33 (Mo.1974); *Cannon v. Bingman*, 383 S.W.2d 169 (Mo.App.1964); *Schroeder v. Zykan*, 255 S.W.2d 105 (Mo. App.1953); *O'Hanlon v. Grand Nat. Co.*, 89 S.W.2d 79 (Mo.App.1936). Such interest is a proper element of damages in an action for damages for misrepresentation. *Crawford v. Smith*, 470 S.W.2d 529 (Mo. banc

1971); *Morrow v. Franklin*, 289 Mo. 549, 233 S.W. 224 (1921); *Harmon v. Dickerson*, 184 S.W. 139 (Mo.App.1916).

The defendant argues that interest should not be allowed because even after receiving a financial statement showing adverse conditions the plaintiff did not attempt to sell his stock until after defendant sold his interests. The defendant overlooks the fact that plaintiff did not learn of the Lakeland involvement until the summer of 1972 and was not fully informed until after suit was filed. Also by necessary implication, the trial court determined the plaintiff did not act with unreasonable delay.

■ The defendant argues that the allowance of interest is a discretionary matter. It is true this is an action in equity and the allowance of interest is subject to equitable considerations. But "Courts of equity, in decreeing or refusing interest, generally follow the law . . . ." 47 C.J.S. Interest § 3, p. 13; *Leggett v. Missouri State Life Insurance Company*, 342 S.W.2d 833 (Mo. banc 1960). In this case there is no evidence of good faith such as was present in *Independence Flying Service, Inc. v. Ailshire*, 409 S.W.2d 628 (Mo. 1966). " 'It is almost an axiom in American jurisprudence that he who has the use of another's money, or money he ought to pay, should pay interest on it.' " *Laughlin v. Boatmen's Nat. Bank of St. Louis*, 354 Mo. 467, 189 S.W.2d 974 (1945). The defendant had the use of plaintiff's money since the date of payment. Without the allowance of interest the plaintiff is not restored to status quo. *Cannon v. Bingman*, supra, 383 S.W.2d 169. With these principles in mind, interest at the legal rate should have been allowed from the date of payment. *Johnson v. Mercantile Trust Company National Ass'n*, supra, 510 S.W.2d 33, and cases there cited.

The cause is remanded for the amendment of the judgment in conformity with this opinion.

BILLINGS, P. J., and HOGAN, J., concur.

---

3. It is error to instruct the jury it must allow punitive damages. *Carson v. Smith*, 133 Mo. 606, 34 S.W. 855 (1896); *Nicholson v. Rogers*, 129 Mo. 136, 31 S.W. 260 (1895); MAI 10.01.